# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHARLES HOMER DUNLAP, | ) | |
| LUCILLE GRACE DUNLAP, | ) | Case No. 09-75282-SCS |
| | ) | |
| *Debtors.* | ) | |
| | ) | |
| STRUCTURED INVESTMENTS CO., LLC, | ) | |
| | ) | APN 10-07041-SCS |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES HOMER DUNLAP, | ) | |
| LUCILLE GRACE DUNLAP, | ) | |
| | ) | Chapter 7 |
| *Defendants.* | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court upon the Motion for Summary Judgment ("Summary Judgment Motion") filed on May 3, 2011,[1] by the Defendant, Charles Dunlap ("Mr. Dunlap"), seeking the entry of summary judgment as to the Amended Complaint filed by the Plaintiff, Structured Investments Co., LLC ("SICO"). At the conclusion of the hearing held on the Summary Judgment Motion on May 24, 2011, the Court took this matter under advisement. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a). This Memorandum Opinion constitutes the Court's conclusions of law.

---

[1] Mr. Dunlap, by counsel, filed a Corrected Motion for Summary Judgment on May 20, 2011. According to footnote 1, the revised motion modifies two sentences by adding the word "no" to a specified sentence, and substituting Mr. Dunlap's name for Mrs. Dunlap's name in another specified sentence. These changes are not material in the overall context of these proceedings.

## I.  Procedural History

### A.  The Complaint, the Answer, and the Motion to Dismiss

SICO filed a six-count Complaint against the Dunlaps on March 25, 2010.[2]  According to

the Complaint, Mr. Dunlap contacted SICO in July 2008 to inquire about exchanging his

monthly military pension payments (hereinafter, the "Pension Payments") for a present value

lump sum payment (hereinafter, the "Lump Sum").  Complaint ¶¶ 7-8, 12.  Prior to entering into

a written agreement with SICO, Mr. Dunlap allegedly provided written financial statements and

information to SICO.  *Id*. ¶¶ 10-11.  Although not explicitly stated in the Complaint, Mr. Dunlap

apparently qualified for the Lump Sum.   Upon written memorialization of the agreement

between Mr. Dunlap and SICO regarding the repayment of the Lump Sum (entitled "Purchase

and Sale Agreement," and hereinafter, the "Agreement") in October 2008, Mr. Dunlap received

the Lump Sum.  *Id*. ¶¶ 9, 13.   Under the Agreement, Mr. Dunlap agreed to remit his Pension

Payments to SICO for a period of no less than ninety-six (96) months in exchange for a lump

sum payment from SICO of $104,354.44, with the required repayment period subject to

extension in the event of an interruption in the remittance of the Pension Payments.  *Id*. ¶¶ 14-16.

The monthly repayments to SICO were to be accomplished by the deposit of the Pension

Payments into an account designated by SICO.  *Id*. ¶¶ 17-18.  By virtue of the Agreement, SICO

asserts that Mr. Dunlap's Pension Payments became its property.  *Id*. ¶ 21.   According to SICO,

repayment ceased in December 2009, just prior to Mr. and Mrs. Dunlap filing a joint petition

under Chapter 7 of the United States Bankruptcy Code.  *Id*. ¶¶ 19, 24.  As a result, SICO argues

that at least eighty-four (84) monthly payments of $2,396.33 each remain due, for a total of

---

[2] Amended versions of the Complaint were filed on March 26, 2010, and March 29, 2010, to correct
technical deficiencies in the endorsement of the pleadings by SICO's counsel.  For ease of reference, the
complaint filed on March 25, 2010, and the versions filed on March 26, 2010, and March 29, 2010, will
be referred to collectively as the Complaint.

$201,291.72, plus interest, costs, and attorney fees as provided by the Agreement.  *Id.* ¶ 27.

The first count of the Complaint seeks entry of a declaratory judgment finding that the Pension Payments are not property of the bankruptcy estate under 11 U.S.C. § 541; that the payments are instead the property of SICO and must be immediately turned over to it; and that SICO may pursue recovery of the payments outside the Bankruptcy Court.  Complaint ¶¶ 30-31, 34-35.   On this count, SICO asserts that the Pension Payments are being held for it in constructive trust by the Dunlaps, or, in the alternative, that SICO has an equitable lien on the payments.  *Id.* ¶ 32.

Count Two seeks a determination that the debt owed to SICO by Mr. Dunlap as a result of the transfer of the Lump Sum to him is nondischargeable pursuant 11 U.S.C. § 523(a)(2)(A), alleging the funds were obtained by false pretenses, false representations, and/or actual fraud. Complaint ¶ 40.  Specifically, SICO alleges that the Dunlaps represented that the full amount of the Lump Sum would be used to pay in full various debts.  *Id.* ¶¶ 37-38.  SICO asserts that the Dunlaps did not in fact use the entirety of the money to pay in full the obligations they disclosed to SICO, that they did not intend to use the funds in that manner, and that they knew this representation was false.  *Id.* ¶¶ 39-40.  SICO argues that it relied on that representation in deciding to transfer the Lump Sum to Mr. Dunlap and was damaged as a result.  *Id.* ¶¶ 41-42.

Count Three seeks a determination that the debt owed to SICO is nondischargeable pursuant 11 U.S.C. § 523(a)(2)(B) on the basis that the Dunlaps obtained the Lump Sum by allegedly providing false written financial statements to SICO.  Complaint ¶¶ 46-47.  Regarding this count, SICO asserts that the Dunlaps failed to disclose certain credit card obligations and certain of their monthly expenses.  *Id.* ¶¶ 48-49.  According to SICO, the Dunlaps intended to deceive it with the false written financial statements, upon which SICO relied and was damaged

as a result.  *Id.* ¶¶ 53, 55

The fourth count requests the Court determine the debt owed to SICO is nondischargeable under 11 U.S.C. § 523(a)(4), asserting that the Dunlaps committed defalcation while acting in a fiduciary capacity.  Complaint ¶¶ 60-61.  SICO alleges that the Dunlaps fraudulently appropriated the Pension Payments, thereby diverting funds to which it was entitled. *Id.* ¶ 61.  SICO further asserts under this count that the Dunlaps' actions constitute embezzlement of money that rightfully belongs to it.  *Id.* ¶ 63.

The fifth count asks the Court to determine that the debt owed to SICO is nondischargeable under 11 U.S.C. § 523(a)(6), alleging that the Dunlaps' failure to remit the Pension Payments to SICO constitutes a conversion of money to their own use and that such use constitutes a willful and malicious injury under § 523(a)(6).  Complaint ¶¶ 66-68.  Finally, the sixth count requests attorney fees and costs pursuant to the Agreement.  *Id.* ¶ 71.

On May 3, 2010, the Dunlaps, by counsel, filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7012, and a Motion for Award of Attorney Fees.  SICO filed an objection to the Motion to Dismiss on May 24, 2010.  The initial pretrial conference was held on May 27, 2010, at which counsel for SICO and counsel for the Dunlaps appeared.  A hearing was scheduled on the Motion to Dismiss for July 15, 2010, and the pretrial conference was continued to the same day and time.  In the interim, pursuant to the Court's ruling at the pretrial conference, the Dunlaps filed a reply to SICO's objection to the Motion to Dismiss on June 10, 2010, to which SICO filed a responsive pleading on June 24, 2010.

Due to problems discovered in the service of the Complaint, the Court ordered the filing of an amended complaint and supporting documentation, with proper service on all parties and a

certificate of service demonstrating such service.  As a result, the Court canceled the hearing and

the continued pretrial conference scheduled for July 15, 2010.  SICO timely filed an Amended

Complaint, identical in substance to the original Complaint, in compliance with the Court's order

on July 21, 2010.[3]  SICO filed the required certificate of service on July 22, 2010, followed by a

supplemental certificate of service on August 9, 2010.  Counsel for the Dunlaps filed a second

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and a Motion for Award

of Attorney Fees on August 5, 2010.  The Court then established a hearing on the second Motion

to Dismiss for October 13, 2010.  The Court also rescheduled the pretrial conference for October

13, 2010.  SICO filed a response in opposition to the second Motion to Dismiss on August 19,

2010.

After consideration of the arguments made by counsel for both parties at the hearing held

on October 13, 2010, and for the reasons stated on the record, the Court denied the second

Motion to Dismiss as to Counts One, Two, Three, Five, and Six as to both Mr. and Mrs. Dunlap.

The Court granted the second Motion to Dismiss with respect to Court Four as to both Mr. and

Mrs. Dunlap but granted SICO ten days to amend that count.  SICO filed no amendment, and,

thus, Count Four is dismissed pursuant to the Court's ruling.  The Court established a trial date

of May 23-24, 2011.

Pursuant to the Court's pretrial order entered October 15, 2010, the Dunlaps were

afforded twenty (20) days within which to file an answer to the Amended Complaint, which they

timely filed on November 2, 2010.  The Answer admits certain factual allegations and denies

others.  With respect to certain of the admitted factual allegations, the Dunlaps provide clarifying

or additional information.  With the exception of certain admissions made in conformance to the

admitted factual allegations, the Answer denies all of the paragraphs contained within the

---

[3] All citations in the remainder of this opinion will be to the Amended Complaint.

specific counts of the Amended Complaint.

### B.  The Motion for Summary Judgment and SICO's Objection

On May 3, 2011, the last day for filing motions prior to trial, Mr. Dunlap filed his Summary Judgment Motion, which was accompanied by his affidavit, and a Motion to Award Attorney Fees.[4]  On May 17, 2011, SICO, by counsel, filed its objection to the Summary Judgment Motion ("Objection").[5]  SICO also filed an evidentiary objection to Mr. Dunlap's affidavit on May 17, 2011.  On May 20, 2011, Mr. Dunlap filed an objection to the affidavit of Steven P. Covey, which accompanied SICO's Objection.

The Summary Judgment Motion recounts, in summarized form, the procedural history of the underlying bankruptcy case and this adversary proceeding.  Summary Judgment Motion ¶¶ 4-7.  The motion then sets forth numerous statements of fact (discussed in more detail in Part III.B.).  *Id*. ¶¶ 8-23.  Addressing the first count of the Amended Complaint, Mr. Dunlap argues that the decision of the United States Court of Appeals for the Fourth Circuit in *Dorfman v. Moorhous* (*In re Moorhous*), 108 F.3d 51 (4th Cir. 1997), controls as to whether SICO holds an interest in Mr. Dunlap's Pension Payments.  As explained in more detail *infra*, Mr. Dunlap asserts that the holding in *Moorhous*—that an attempted assignment of military retirement pay does not vest a creditor with ownership in the military pay due to the anti-assignment provision contained in 37 U.S.C. § 701—prevented SICO from taking a property interest in the payments.

---

[4] Mrs. Dunlap filed a separate Motion for Summary Judgment as the Amended Complaint pertained to her.  The Court held a hearing on her motion contemporaneously with the hearing on Mr. Dunlap's Summary Judgment Motion.  The Court granted Mrs. Dunlap's summary judgment motion for the reasons stated on the record from the bench and entered an order memorializing the ruling on Mrs. Dunlap's summary judgment motion on June 8, 2011.

[5] SICO filed only one objection in response to the two separate Motions for Summary Judgment filed individually by the Dunlaps.  Within that objection, SICO did not separately set forth its arguments as to each individual motion.  To the extent the Court can discern that certain of SICO's assertions are responsive to arguments made only in Mrs. Dunlap's Motion for Summary Judgment, those assertions will not be addressed in the context of Mr. Dunlap's Summary Judgment Motion.

Summary Judgment Motion at 6-7.  This conclusion is not altered, according to Mr. Dunlap, by

changes to the applicable regulations instituted since *Moorhous* was decided.  *Id*. at 7-8.  As a

result, Mr. Dunlap argues that he is entitled to summary judgment on the first count of the

Amended Complaint.

Mr. Dunlap also contends that he is entitled to summary judgment as to the count of the

Amended Complaint seeking nondischargeability under 11 U.S.C. § 523(a)(2)(A).  Mr. Dunlap

maintains that SICO can produce no evidence to demonstrate that he did not use the Lump Sum

for the purpose he represented to SICO—to pay various creditors.  Summary Judgment Motion

at 10.  Mr. Dunlap bases this argument on SICO's requirement that he mail to SICO the checks

and payment stubs for the debts he desired to pay with the funds that constituted the Lump Sum,

thereby making SICO aware of the exact amount of money being sent to those specific creditors.

As a result, Mr. Dunlap argues that SICO cannot prove that he made a false representation.  *Id*.

Mr. Dunlap claims that SICO also cannot prove that he provided false written financial

statements, as required under 11 U.S.C. § 523(a)(2)(B), by a preponderance of the evidence.  He

asserts that the undisputed facts show that he provided numerous documents to SICO, including

a financial information form provided to him by SICO, a monthly home budget, and profit and

loss statements for his real estate business.  Summary Judgment Motion at 11-12.  These

documents supplied SICO with significant information, and thus, Mr. Dunlap argues that he gave

SICO a true and accurate account of his financial position at the time the Agreement was

entered.  *Id*. at 12.

Mr. Dunlap asserts that he is likewise entitled to summary judgment on the count arising

under 11 U.S.C. § 523(a)(6), the fifth count of the Amended Complaint, for the same reasons

asserted with regard to the declaratory judgment count.  Again, Mr. Dunlap argues that, based

upon the facts and applicable precedent within the Fourth Circuit, SICO does not have a property interest in his Pension Payments. Summary Judgment Motion at 14. Therefore, because SICO does not have a property interest in the payments, it could not have suffered injury, intentional or otherwise, when Mr. Dunlap directed the Department of Finance and Accounting Services ("DFAS") to deposit his Pension Payments into an account other than the account designated by SICO. *Id.* Mr. Dunlap asserts that SICO's claim against him is unsecured and entitled only to pro rata distribution along with his other unsecured creditors. *Id.* Finally, Mr. Dunlap seeks entry of an order awarding him his attorney fees and costs in connection with this proceeding pursuant to 11 U.S.C. § 523. *Id.*

SICO contends genuine issues of material fact exist that require the Court to deny Mr. Dunlap's motion and to proceed to a trial on the merits of the Amended Complaint. With regard to the declaratory judgment count, as discussed in more detail in Part III.C., SICO's argument can be reduced to the following points. First, SICO argues that 37 U.S.C. § 701 does not apply to the instant matter because the transaction at issue does not, either in form or substance, constitute an assignment. *See* Objection at 14-16. On this point, SICO asserts that Mr. Dunlap does not have standing to raise the anti-assignment provision of 37 U.S.C. § 701, as such standing, in other contexts, has generally been reserved for the sovereign. *See* Objection at 21-23. According to SICO, Mr. Dunlap agreed to sell, or otherwise equitably assigned, his Pension Payments to SICO after he received those payments on a monthly basis, thereby giving Mr. Dunlap control over the payments until the payments were transferred to SICO. *See id.* at 20, 23-24. SICO asserts that Mr. Dunlap would not have retained control over his Pension Payments if an assignment had occurred. *See id.* at 15, 17, 20. Next, SICO contends that neither *Moorhous* nor the other cases cited by Mr. Dunlap apply, as all of the cases are either

distinguishable or represent "outdated" case law.  *See id.* at 16-20.

SICO's argument as to the 11 U.S.C. § 523(a)(2)(A) count of the Amended Complaint is more concise.  First, SICO maintains that Mr. Dunlap wrongfully diverted the Pension Payments for his own use, thereby converting SICO's funds.  Objection ¶ 24.  SICO also asserts that Mr. Dunlap did not use the entirety of the Lump Sum to pay the debts as he had represented.  *Id.* ¶¶ 23, 29.  Instead, SICO asserts that Mr. Dunlap obtained the Lump Sum as a result of fraud and converted or "indirectly use[d]" the money for his own use, in that he and Mrs. Dunlap paid off their credit cards with the Lump Sum so that they could then use their credit cards for personal expenses without disclosing the intent to do so.  *Id.* at 29-30.

With regard to the count asserted under 11 U.S.C. § 523(a)(2)(B), SICO argues inaccuracies contained in the financial documents provided by Mr. Dunlap are apparent when compared to the Dunlaps' bankruptcy schedules.  Objection at 34.  To this end, SICO asserts that a genuine dispute of material fact exists regarding whether Mr. Dunlap incurred certain obligations prior to entering into the Agreement with SICO but failed to disclose those obligations to SICO.  *Id.* at 32.  SICO specifically cites the total credit card debt listed in the Dunlaps' bankruptcy Schedule F as compared to the amount of credit card debt disclosed by Mr. Dunlap on the financial statement he completed at SICO's request during the application process.[6]  *Id.*  SICO concludes that, because certain debts listed on the Dunlaps' bankruptcy schedules have not been explained by them, those debts were in existence, but not disclosed, at the time Mr. Dunlap and SICO entered into the Agreement.  *Id.* ¶¶ 28-29

SICO further asserts that the bankruptcy schedules filed in the underlying case demonstrate that the Dunlaps incurred $200,000.00 in debt between the time of Mr. Dunlap's

---

[6] The specific mathematical calculations proffered by SICO on these issues are discussed in more detail *infra*.

initial inquiry to SICO (July 2008) and the time the bankruptcy case was filed (December 2009). According to SICO, the increased amount of debt contradicts Mr. Dunlap's representation to SICO that he and his wife would reduce their annual expenses by almost $60,000.00 and further contradicts the expenses disclosed by Mr. Dunlap during the application process. *Id.* ¶¶ 25, 30. SICO also believes that Mr. Dunlap overstated his yearly household income and misrepresented his household expenses. *Id.* ¶¶ 31, 33.

Finally, addressing the 11 U.S.C. § 523(a)(6) portion of its Amended Complaint, SICO cites to two alleged genuine issues of material fact in dispute such that summary judgment cannot be granted as to this count. Objection at 36-37. First, SICO cites the Dunlaps' alleged "indirect use" of the Lump Sum to pay off their credit cards only to use the cards again for personal expenses, as discussed with regard to the § 523(a)(2)(A) count. Objection at 36. Second, SICO relies on Mr. Dunlap's alleged failure to disclose certain debts, as discussed in the context of the § 523(a)(2)(B) count. Objection at 36.

SICO addresses Mr. Dunlap's request for attorney fees by asserting that such request is "baseless." In support of this argument, SICO offers only that the Agreement provides that SICO would be entitled to payment of its attorney fees by Mr. Dunlap in connection with recovery efforts. *Id.* at 37-38.

### C.  The Hearing on the Summary Judgment Motion

At the hearing on the Summary Judgment Motion, counsel for Mr. Dunlap admitted that, while some facts may be in dispute, none of the disputed facts are material with regard to the four remaining substantive counts of the Amended Complaint. Transcript of May 24, 2011, hearing, at 13 (hereinafter "Tr."). Beginning with the declaratory judgment count, Mr. Dunlap's counsel reemphasized that the *Moorhous* decision controls in the instant matter. *Moorhous*,

according to counsel, prohibits the assignment of military pension payments unless the payments are due and payable because the retiree's right to those payments do not arise until that specific point in time.  Thus, SICO cannot have a security interest in the Pension Payments because Mr. Dunlap would not possess the right to the payments until the payments became due and payable; in other words, Mr. Dunlap would have no rights in the Pension Payments to assign to SICO.  *Id.* at 8-9.  Counsel for Mr. Dunlap also pointed out that SICO's Objection speaks both to having received an assignment of the Pension Payments and to having purchased the Pension Payment stream.  *Id.*  Counsel likened SICO's argument that it took a security interest in the right to the Pension Payments to an argument that a security interest could be taken in a proposed electronic transfer of funds.  *Id.* at 9.

On the false representation ground asserted under § 523(a)(2)(A), Mr. Dunlap's counsel highlighted that several of the documents, including one signed by Mrs. Dunlap, state that the funds being advanced by SICO would be used for debt consolidation purposes.  Tr. at 10.  She also recited facts, admitted by SICO, supporting that Mr. Dunlap used the Lump Sum for the stated purpose of debt consolidation, including that SICO required him to supply it with the checks to be sent to the creditors he was paying with the Lump Sum.  SICO forwarded the checks to the specified creditors after it deposited the Lump Sum into the Dunlaps' checking account.  *Id.*  According to counsel, although the charts contained in SICO's Objection are mathematically flawed in several respects, the charts do demonstrate SICO's acknowledgement that over $94,000.00 of the Lump Sum was paid to the Dunlaps' creditors.  *Id.* at 11.  Mr. Dunlap's counsel also addressed SICO's argument that the Dunlaps used the Lump Sum to pay down their credit cards so that they could use the cards again for personal expenses.  On this point, she offered that Mr. Dunlap paid off the debts he had previously represented to SICO.  She

also noted that neither the Agreement signed by Mr. Dunlap nor any documents related to the Agreement contain any prohibition on using those credit cards that were paid down or on incurring new or additional debt while Mr. Dunlap was repaying SICO. *Id.* at 11-12.

As to the alleged false written financial statements, counsel for Mr. Dunlap argued that the charts contained in SICO's Objection do not demonstrate that material facts are in dispute but instead simply show that the information provided to SICO in July 2008 differed from that contained in the Dunlaps' bankruptcy schedules filed seventeen (17) months later, in December 2009. *Id.* at 13. Counsel contended that the focus of the analysis under 11 U.S.C. § 523(a)(2)(B) must remain on the state of Mr. Dunlap's finances in July 2008 and that SICO has not shown that any genuine dispute of material fact existed with regard to the accuracy of the information Mr. Dunlap supplied to SICO at that time. Tr. at 13-14.

Counsel for SICO asserted that material facts are genuinely in dispute with regard to all four remaining substantive counts of the Amended Complaint. As to the declaratory judgment count, SICO's counsel discussed no specific allegedly disputed facts of the instant case but instead reasserted that the *Moorhous* decision is distinguishable from and inapplicable to this case because it addressed only the issue of a constructive trust, which issue this Court earlier dismissed in the present case. *Id.* at 28.

As to the allegations asserted in support of the § 523(a)(2)(A) count, counsel for SICO contended that Mr. Dunlap used the Lump Sum and then immediately incurred additional debt. Tr. at 24. Upon the Court's inquiry, however, SICO's counsel was unable to cite to any specific provision of the Agreement wherein Mr. Dunlap promised not to incur any additional debt while repaying SICO; he was only able to cite to Mr. Dunlap's promise to repay the Lump Sum. *Id.* at 25. Counsel for SICO concurred that Mr. Dunlap supplied SICO with $94,000.00 in checks for

payments to his creditors.  *Id*. at 29.

With regard to the alleged false written financial statements, counsel for SICO concentrated largely on the difference in total debt as disclosed by Mr. Dunlap to SICO prior to the advancement of the Lump Sum in 2008 and that which the Dunlaps disclosed in their bankruptcy schedules filed in December 2009.  SICO was unable to offer further evidence to support its apparent argument that the debts disclosed in the bankruptcy schedules existed at the time Mr. Dunlap applied to SICO for the Lump Sum.  *See id*. at 18-21, 28.  SICO's counsel also argued that Mr. Dunlap's household income and expenses were higher at the time the Dunlaps filed for bankruptcy protection than when Mr. Dunlap first applied to SICO in July 2008.  *Id*. at 24.  Counsel disagreed with the Court's suggestion that the difference in the Dunlaps' expenses at the time they filed their bankruptcy petition was attributable to business expenses they incurred as real estate agents, which expenses were previously paid through the Dunlaps' corporate entity but which were later included in their household budget after the corporate entity's existence was terminated.  *See id*. at 24-25.

With regard to the § 523(a)(6) count, and in support of the argument that Mr. Dunlap did not intend to repay SICO, SICO's counsel asserted that the Dunlaps incurred $340,000.00 in debt between the time the Lump Sum was advanced in 2008 and the time the Dunlaps filed their bankruptcy petition in 2009.  Tr. at 26.  He was unable, however, to point the Court to specific evidence to support SICO's contention that a genuine dispute of material fact exists on this issue.[7]

---

[7] SICO's counsel asserted that he had requested evidence from the Dunlaps that certain of the debts listed on their bankruptcy schedules were in fact incurred between the time SICO advanced the Lump Sum to Mr. Dunlap and the time of the Dunlaps' bankruptcy filing in December 2009.  According to counsel, some information was provided to substantiate approximately $34,000.00 of the debt but a significant portion was essentially still unaccounted for.  Tr. at 21.  While counsel admitted that no motion to compel the turnover of evidence relating to his outstanding discovery requests had been filed as of the hearing on

During rebuttal, the Court inquired of Mr. Dunlap's counsel why it should not find that a genuine dispute of material fact exists in light of Mr. Dunlap's assertion that he intended to repay SICO but for the difficulties encountered in the real estate business as a result of the global economic downturn (as testified by Mr. Dunlap at his deposition, the transcript of which was an exhibit to SICO's Objection) and SICO's counter-proof that the Dunlaps incurred a significant amount of debt within a short period of time.  Counsel contended that a genuine dispute of material fact does not exist regarding her client's intent to repay the Lump Sum, as the facts demonstrate that Mr. Dunlap did make twelve payments under the Agreement.  *Id*. at 30-31, 34. Mr. Dunlap's counsel countered SICO's argument that certain of Mr. Dunlap's debts existed but were undisclosed to SICO during the application process by highlighting that such statements are insufficient to show that a genuine dispute of material fact exists; the discovery period for this matter has closed; the Dunlaps have turned over all documents in their possession regarding debts incurred between the advancement of the Lump Sum by SICO and the filing of the bankruptcy petition; and SICO has failed to file a motion to compel further discovery.  *Id*. at 36. Mr. Dunlap's counsel admitted that her client incurred new debt after entering into the Agreement with SICO but asserted that SICO's circumstantial statements that Mr. Dunlap's debts totaled a certain amount when the Agreement was entered into but totaled a higher amount when the bankruptcy case was filed do not rise to the level necessary to show a material fact is genuinely in dispute as to the alleged false financial statements.  *Id*.

---

the Summary Judgment Motion (May 24, 2011), *id*. at 22, he represented that such motion would be forthcoming.  *Id*. at 26, 40.  As of the date of entry of this Memorandum Opinion, no such motion has been filed.  Under the order issued October 15, 2010, following the continued initial pretrial conference, the deadline for the completion of discovery was April 25, 2011, and the deadline for the filing of any motions prior to the trial date was May 3, 2011.

## II.  The Objections to Affidavits

As noted in Part I.B., SICO filed an evidentiary objection to Mr. Dunlap's affidavit, which is an exhibit to his Summary Judgment Motion.  Likewise, Mr. Dunlap filed an objection to the affidavit of Steven P. Covey, which accompanied SICO's Objection.  Before addressing the merits of the parties' arguments on the Summary Judgment Motion, the Court must rule upon the objections lodged to the affidavits to determine if the statements contained therein may be considered at the summary judgment stage.

SICO has objected to eight of Mr. Dunlap's statements in his affidavit.  Those statements are contained in paragraphs 6, 8 through 12, 15, and 16 of the affidavit.  As to all of these statements, SICO objects based upon the following grounds: (1) lack of foundation; (2) vague and ambiguous as to time; (3) inadmissible hearsay without exception; and (4) assumption of facts not in evidence.  As to paragraphs 6, 10 through 12, 15, and 16, SICO asserts that the paragraphs are argumentative and not factually based.  Finally, as to paragraphs 10 through 12, 15, and 16, SICO asserts that the statements constitute improper conclusions.  Objection to Affidavit of Mr. Dunlap at 1-3.

Mr. Dunlap objects to the entirety of Mr. Covey's affidavit on the basis that Mr. Covey's statements constitute "speculation, conjecture, conclusory allegations, argument, legal conclusions, inadmissible opinion and/or hearsay."  Mr. Dunlap also contends that the source of Mr. Covey's statements was not his own personal knowledge and that the affidavit does not demonstrate what steps Mr. Covey may have taken to acquire such knowledge.  Finally, Mr. Dunlap objects to the affidavit because it does not disclose who prepared the charts contained in the affidavit.  Objection to Affidavit of Mr. Covey at 2.

To be properly considered at the summary judgment stage, an affidavit must set forth evidence that would be admissible at trial. Further, it must be made upon personal knowledge and show that the affiant "is competent to testify on the matters stated."   Fed. R. Civ. P. 56(c)(4).

As to Mr. Dunlap's affidavit, the Court finds that all of SICO's objections based upon lack of foundation and hearsay should be overruled. All of the statements relate either to events surrounding the transaction with SICO, the circumstances leading the Dunlaps to file bankruptcy, which SICO has made relevant to these proceedings by the allegations contained in the Amended Complaint, or facts related to the bankruptcy itself. Further, all of the statements involve knowledge possessed by Mr. Dunlap as they concern his own personal activities and financial circumstances and make no reference to statements by anyone other than himself. With regard to the objections based upon vagueness and ambiguity as to time, the Court finds that each statement contains either a date specific (as in the case of paragraph 8, which contains the date of October 10, 2008, as the date Mr. Dunlap signed the Agreement with SICO); a month and year (as in the case of paragraphs 9, 10, and 12, which dates appear to be sufficient and adequate to enable SICO to consider the statements); or a reference to an event (such as in paragraph 6 when Mr. Dunlap refers to the application process with SICO or paragraph 16 when Mr. Dunlap refers to "when my wife and I filed for bankruptcy."). Each of these references are more than adequate to provide SICO with the relevant point in time to enable it to attempt to rebut the statements, and, therefore, the Court finds that these objections should likewise be overruled.

As to SICO's objections that the paragraphs assume facts not in evidence, the objection is overruled as to paragraphs 6 and 8 because those statements refer to events SICO has discussed in its pleadings and documents that SICO has submitted to the Court. As to the remaining

objections on this basis, the Court finds that those objections should be overruled because the facts asserted are all within Mr. Dunlap's personal knowledge, and none of the statements, including those contained in paragraphs 6 and 8, contain or make any assumptions as to other facts whatsoever.

The Court further finds that SICO's objection that paragraphs 6, 10 through 12, 15, and 16 are argumentative should be overruled. The statements contain no argument, but instead are recitations of events within Mr. Dunlap's personal knowledge. Finally SICO's objection that the statements contained in paragraphs 10 through 12, 15, and 16 constitute improper conclusions are also overruled. The paragraphs, in short, contain no conclusions other than Mr. Dunlap's understanding as to the effect the Agreement would have on his own circumstances.

With regard to Mr. Dunlap's objection to Mr. Covey's affidavit *en toto*, the Courts finds that the objection should be sustained. The affidavit provides that Mr. Covey has "personal knowledge of the facts" contained therein "and, if called to testify, I would and could competently testify hereto." While it is true that Mr. Covey signed the Agreement with Mr. Dunlap on behalf of SICO, the affidavit does not state how Mr. Covey has knowledge of the alleged facts and circumstances contained therein. The affidavit also fails to show how Mr. Covey's position or duties, as noted in the affidavit as "Managing Member" of SICO, provide him with the base of knowledge upon which he relies in his affidavit.[8] He does not state that he has had any conversations or correspondence with Mr. Dunlap. He does not state that he has discussed this matter with any agents or employees of SICO. He does not state that he has reviewed the file or documents possessed by SICO relating to its transaction with Mr. Dunlap.

---

[8] Although the Court of Appeals for the Fourth Circuit has held that "ordinarily, officers would have personal knowledge of the acts of their corporations," *Catawba Indian Tribe of South Carolina v. South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992), without further description or information as to the position and duties of a "Managing Member" of SICO, this Court cannot construe such position as an "officer" so as to validate Mr. Covey's statements in light of the other deficiencies in his affidavit.

He does not state, and indeed, the record does not indicate, that Mr. Covey was present during Mr. Dunlap's deposition.   Further, Mr. Covey does not state that he has even reviewed the transcript of Mr. Dunlap's deposition, despite myriad references in his affidavit to statements made by Mr. Dunlap during his deposition.   He also makes numerous references to the exhibits attached to the deposition.   Mr. Covey does not state that he personally compiled the charts contained in his affidavit or that the charts were prepared at his direction from the financial information and statements submitted by Mr. Dunlap to SICO and from the Dunlaps' bankruptcy schedules.   The Court, therefore, finds that SICO has failed to sustain its burden that Mr. Covey has personal knowledge of the statements contained in his affidavit and that he "is competent to testify on the matters stated."   Fed. R. Civ. P. 56(c)(4).

Further, in numerous instances, the affidavit sets forth conclusions and, in others, speculation.   One example as to the former is found in paragraph 31, where Mr. Covey presumes that the Dunlaps' failure to provide additional information to explain alleged discrepancies between debts listed in the financial statements provided to SICO and their bankruptcy schedules serves as "proof" that no such evidence exists.   Mr. Covey's speculation is exemplified in statements such as those contained in paragraph 23 where he discusses Chart 1 in the affidavit and the allegedly misrepresented debts.   This statement is a prime example of Judge Waldrep's admonition that a "nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."   *Bennett v. Smith* (*In re Smith*), Adv. No. 05-2079, 2006 WL 3333801, at *7 (Bankr. M.D.N.C. Nov. 16, 2006) (quoting *Harleysville Mut. Ins. Corp. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995)).   Finally, even if Mr. Dunlap's objection was overruled, summary judgment in favor of Mr. Dunlap would still be appropriate as to Counts One, Two, Three, and Five for the reasons stated *infra*.

III.  Conclusions of Law

A.  The Standard for Adjudication of a Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, as incorporated in bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, governs summary judgment proceedings.[9]   The Court of Appeals for the Fourth Circuit has articulated the standards by which this Court must measure a motion for summary judgment:

> Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Where a case is "decided on summary judgment, there have not yet been factual findings by a judge or jury, and [the appellant's] version of events . . . differs substantially from [the appellee's,] . . . courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion."  *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1774, 167 L. Ed. 2d 686 (2007) (internal quotation marks and alterations omitted).

> However, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Id.* at 1776 (quoting Fed. R. Civ. P. 56(c)).  Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. . . .   Factual disputes that are

---

[9] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010.  Rule 86 of the Federal Rules of Civil Procedure provides that amendments to the rules become effective on the date specified by the United States Supreme Court.  Rule 86 further provides that amendments govern "proceedings after that date in an action then pending unless the Supreme Court specifies otherwise; or the court determines that applying them in a particular action would be infeasible or work an injustice."  Fed. R. Civ. P. 86(a)(2).  The Advisory Committee Notes for the December 1, 2010 amendments to Rule 56 state:

> Rule 56 is revised to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts.  The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Fed. R. Civ. P. 56 advisory committee's note.  In light of the advisory committee's note and this Court's analysis of the amendments to Rule 56, this Court sees no reason of why the application of the December 1, 2010 amendments to the instant proceeding would be infeasible or work an injustice on either party.

irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in original).

*Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 332 (4th Cir. 2009). While the Court is permitted to draw reasonable inferences from the underlying facts, "those inferences must . . . fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817 (4th Cir. 1995)).

Judge Pearson has summarized the parties' burdens in a summary judgment context:

> The moving party has the initial burden of proving that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmoving party to demonstrate that a triable issue of fact exists which precludes summary judgment against the nonmovant. *Holland v. Double G. Coal Co.*, 898 F. Supp. 351 (S.D. W. Va. 1995).

*Equicredit Corp. v. Simms* (*In re Simms*), 300 B.R. 877, 879 (Bankr. S.D. W. Va. 2003). The nonmoving party must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party fails to do so, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (quoting Fed. R. Civ. P. 56(c)). Thus, the nonmoving party must satisfy its burden as to each essential element of its case. *Bennett v. Smith* (*In re Smith*), Adv. No. 05-2079, 2006 WL 3333801, at *7 (Bankr. M.D.N.C. Nov. 16, 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The nonmoving party cannot 'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Id.* (quoting *Harleysville Mut. Ins. Corp. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995)).  Instead, to defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is a genuine dispute of a material fact that must be decided at trial.  *Celotex*, 477 U.S. at 324.  Specifically, Rule 56(c) provides that the opposing party must support the assertion that a genuine dispute of material fact exists in one of two ways: by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A) (2011); or by "showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute," Fed. R. Civ. P. 56(c)(1)(B).  Judge Anderson has defined the threshold for materiality of facts to invoke a genuine dispute:

> Those facts which are "material" for purposes of summary judgment are identified by the substantive law of the claim asserted.  In other words, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*

*Hampton v. Conso Prods., Inc.*, 808 F. Supp. 1227, 1232 (D.S.C. 1992).

In considering a motion for summary judgment, "it remains the well established rule that 'the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Moore v. Morton*, No. 91-2603, 1992 WL 46292, at *4 (4th Cir. Apr. 2, 1992) (unpublished table decision) (quoting *Anderson*,

477 U.S. at 249).  "[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Id.* (quotations omitted) (citing *Anderson*, 477 U.S. at 248-49).  If the entirety of the record of a case could not lead a rational trier of fact to find for the nonmoving party, the Court may find there is no genuine dispute for trial.  *In re Smith*, 2006 WL 3333801, at *7 (quoting *In re Trauger*, 101 B.R. 378, 380 (Bankr. S.D. Fla. 1989) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

### B.  Undisputed Facts

The Summary Judgment Motion sets forth individually numbered paragraphs containing statements of fact and also incorporates factual assertions contained in Mr. Dunlap's affidavit, which accompanies the motion as Exhibit E.  The Court's task of determining those facts that are undisputed by the parties is unnecessarily complicated by the construction of SICO's Objection, which fails to directly respond to the sequentially numbered paragraphs of the Summary Judgment Motion.  Federal Rule of Civil Procedure 8, as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7008, requires that, when responding to a pleading, a party must "state in short and plain terms its defenses to each claim asserted against it; and admit or deny the allegations asserted against it by an opposing party."  Fed. R. Civ. P. 8(b).  Instead, SICO sets forth its own "Statement of Facts" in its Objection.   Making the Court's task even more painstaking is the inclusion by SICO in its "Statement of Facts" of statements that constitute unsupported opinions, legal arguments, or conclusions.[10]   The Court will disregard such

---

[10] Examples of SICO's unsupported opinions can be found in paragraphs 2 (when discussing the Dunlaps' previous joint bankruptcy petition filed under Chapter 13 of the Bankruptcy Code: "[T]he [Dunlaps] were

statements.  As a result of the tedious undertaking of comparing Mr. Dunlap's factual assertions to SICO's version of the same, as well as to the affidavit of Steven P. Covey,[11] the Court has determined that the following facts are undisputed.

1.  Mr. Dunlap is a retired Air Force Major and the legal recipient of the Pension Payments, which payments were approximately $2,396.33 in October 2008.  Summary Judgment Motion ¶ 8; Dunlap Affidavit ¶ 4; Objection ¶¶ 1, 3; Covey Affidavit ¶¶ 3, 5.

2.  Each month, the United States government, through DFAS, deposits the Pension Payments into an account designated by Mr. Dunlap.  Summary Judgment Motion ¶ 8; Objection ¶ 3; Covey Affidavit ¶ 5.

3.  Mr. Dunlap inquired with SICO about receiving a present value lump sum payment on July 1, 2008.  Summary Judgment Motion ¶ 9; Objection ¶ 3; Covey Affidavit ¶ 5.

4.  Mr. Dunlap provided financial information about his personal and business finances to SICO.  Summary Judgment Motion ¶ 10; Dunlap Affidavit ¶ 6; Objection ¶ 8; Covey Affidavit ¶ 10.

5.  Mr. Dunlap entered into the Agreement with SICO.  Summary Judgment Motion ¶ 11;

---

fully aware of the bankruptcy system and procedures, and the [Dunlaps] knew exactly what to do in the [current] bankruptcy case."); and 24 of the Objection (when discussing the Dunlaps' alleged financial activity after the agreement was memorialized: "The [Dunlaps] immediately turned around and cashed out on and maxed out on such credit cards [that were paid down, at least in part, by the Lump Sum.]"). Examples of legal arguments and conclusions are found in paragraphs 8 ("[T]he [Dunlaps] knowingly provided SIC[O] with alleged false written statements."); 16 ("[T]he Debtors indirectly and wrongfully diverted the Agreement Monthly Payments for the [Dunlaps'] own use . . . ."); and 34 of the Objection ("[Mr. Dunlap's] Financial Statements and Financial Information as provided to SIC[O] were materially false, and therefore, based on the magnitude and numerosity of the omissions of significant liabilities, expenses, and income from the Financial Statements and Financial Information, the Court can find that the statements provided by the [Dunlaps] were materially false, and at the very least, triable issues of fact exists.").

[11] Although nowhere stated, the Court's review of the Objection and Mr. Covey's affidavit reveals that the entirety of the affidavit is contained essentially verbatim within the Objection.  Further, for the reasons stated in Part II, because the Court would find that summary judgment should be granted as to Counts One, Two, Three, and Five even if the objection to Mr. Covey's affidavit were overruled, the Court will include citations to his affidavit in this section.

Dunlap Affidavit ¶ 8; Objection ¶ 3; Covey Affidavit ¶ 5.

6.  The Agreement provided that SICO would pay Mr. Dunlap $104,354.44.  Summary Judgment Motion ¶ 13; Objection ¶ 4; Covey Affidavit ¶ 6.

7.  Under the Agreement, in exchange for the Lump Sum, SICO agreed to purchase and Mr. Dunlap agreed to sell certain of his Pension Payments.  Summary Judgment Motion ¶ 14; Objection ¶ 4; Covey Affidavit ¶ 6.

8.  Pursuant to the Agreement, Mr. Dunlap executed a direct deposit authorization, instructing DFAS to deposit his Pension Payments into an account designated by SICO. Summary Judgment Motion ¶ 15; Objection ¶¶ 10, 12; Covey Affidavit ¶¶ 12, 14.

9.  SICO required that checks and payment stubs for the creditors being paid with the Lump Sum be forwarded to SICO before it would provide Mr. Dunlap with the Lump Sum. Summary Judgment Motion ¶ 16; Objection ¶ 19; Covey Affidavit ¶ 21.

10.  Mr. Dunlap forwarded checks totaling $94,895.82 to SICO, which it received. Summary Judgment Motion ¶ 17; Objection ¶ 20; Covey Affidavit ¶ 22.

11.  SICO deposited $101,958.11 into a bank account owned by Mr. Dunlap in October 2008.  Summary Judgment Motion ¶ 18; Objection ¶ 22; Covey Affidavit ¶ 24.

12.  SICO mailed the checks provided to it by Mr. Dunlap to his creditors.  Summary Judgment Motion ¶ 19; Objection ¶ 20; Covey Affidavit ¶ 22.

13.  The Dunlaps' bank account was debited $94,895.82 by a total of ten checks. Summary Judgment Motion ¶ 20; Objection ¶ 21; Covey Affidavit ¶ 22.

14.  Mr. Dunlap made twelve payments to SICO.  Summary Judgment Motion ¶ 21; Dunlap Affidavit ¶ 13; Objection ¶¶ 4, 18; Covey Affidavit ¶¶ 6, 20.

15.  In November 2009, Mr. Dunlap authorized DFAS to deposit the Pension Payments

into his TowneBank account, and, starting in December 2009, Mr. Dunlap made no payments to SICO.  Summary Judgment Motion ¶ 22; Dunlap Affidavit ¶¶ 12-13; Objection ¶ 15; Covey Affidavit ¶ 17.

16.    The Dunlaps filed their joint petition under Chapter 7 of the United States Bankruptcy Code with this Court on December 21, 2009.  Dunlap Affidavit ¶ 14; Objection ¶ 14; Covey Affidavit ¶ 16.

### C.  Count One: Declaratory Judgment

In the first count of its Amended Complaint, SICO seeks entry of a declaratory judgment as to Mr. Dunlap's Pension Payments.  Specifically, SICO asks the Court to find that Mr. Dunlap has "only bare legal title and no equitable rights" in the Pension Payments and that the payments are not property of the bankruptcy estate under 11 U.S.C. § 541 but instead are SICO's property. Amended Complaint ¶¶ 30-31.  As a result, SICO asserts that that the Pension Payments are being held in constructive trust by the Dunlaps, or, in the alternative, that SICO has an equitable lien on the payments.  *Id*. ¶ 32.  SICO requests the Court order immediate turnover of the payments.  *Id*. ¶ 31.  Finally, SICO seeks permission to pursue recovery of the payments outside the Bankruptcy Court.  *Id*. ¶ 35.

In his answer, Mr. Dunlap denies all of the allegations contained in Count One.  Answer ¶¶ 29-35.  In his Summary Judgment Motion, Mr. Dunlap admits he is in breach of the agreement to direct the deposit of his Pension Payments into the bank account specified by SICO.  Summary Judgment Motion at 6.  Despite breaching that portion of the Agreement, Mr. Dunlap argues that the decision of the United States Court of Appeals for the Fourth Circuit in *Dorfman v. Moorhous* (*In re Moorhous*), 108 F.3d 51 (4th Cir. 1997), and its interpretation of 37 U.S.C. § 701 contradicts SICO's argument as to the ownership of his Pension Payments.

Summary Judgment Motion at 6, 9.  Mr. Dunlap asserts that *Moorhous* stands for the proposition

that an attempted assignment of military retirement pay does not vest a creditor with ownership

in the pension payments because of the anti-assignment provision contained in 37 U.S.C. §

701(a).    Summary Judgment Motion at 6.    Section 701(a) provides, "[u]nder regulations

prescribed by the Secretary of the military department concerned, a commissioned officer of the

Army, Navy, Air Force, or Marine Corps may transfer or assign his pay account, when due and

payable." 37 U.S.C. § 701(a).  According to Mr. Dunlap, this statute prevents the assignment of

military retirement pay prior to that pay being due and payable to the retiree.  As a result, he

argues that SICO does not have a property interest in his Pension Payments.  Summary Judgment

Motion at 7-8 (citing *Moorhous*, 108 F.3d at 53).  Mr. Dunlap also cites *Bowden v. Structured

Investments Co.* (*In re Bowden*), 315 B.R. 903 (Bankr. E.D. Wash. 2004), as reaching a similar

conclusion to that reached in *Moorhous* in support of his arguments.    Summary Judgment

Motion at 7.  As to SICO's argument that it should be found to have an equitable assignment,

Mr. Dunlap maintains that 37 U.S.C. § 701(a) does not provide for such an exception.  Summary

Judgment Motion at 9.

Mr. Dunlap asserts that his reading of *Moorhous* is not altered by amendments to the

applicable Department of Defense regulations following the *Moorhous* decision because the

allotment regulations are quite similar in substance.  *Id*. at 7-8 (comparing Dep't of Def. Fin.

Mgmt. Regulations 7B, ch. 7, at 40103(c) (June 1995), with Dep't of Def. Fin. Mgmt.

Regulations 7B, ch. 19, at 190306 (Nov. 2009), regarding the requirements for terminating an

allotment).  Mr. Dunlap cites the current version of the regulations governing allotments of

military pay, wherein allotments are described as a "tool of convenience" for retirees.  *Id*.

(quoting Dep't of Def. Fin. Mgmt. Regulations 7B, ch. 19, at 1901).  Mr. Dunlap contends that

the allotment regulations for military retirees, both now and when *Moorhous* was decided, allow

retirees to revoke allotments.  *See id.* at 7-8 (quoting Dep't of Def. Fin. Mgmt. Regulations 7B,

ch. 19, at 190306 (Nov. 2009); Dep't of Def. Fin. Mgmt. Regulations 7B, ch. 7, at 40103(c)

(June 1995)).  Despite his discussion of the allotment example, Mr. Dunlap argues that the

Agreement with SICO should not be found to constitute an allotment so as to except it from the

general rule that military pension payments cannot be assigned until those payments are due and

payable, especially since the proper procedures for establishing an allotment were not followed

here.  *Id.* at 8 (citing 37 U.S.C. § 701).  Mr. Dunlap therefore contends that he is entitled to

summary judgment on Count One of the Amended Complaint and that SICO should be deemed

to be an unsecured creditor.  *Id.* at 9.

SICO's Objection as to Count One argues that, even if Mr. Dunlap has standing to assert

the anti-assignment provision found in 37 U.S.C. § 701 (which, discussed below, SICO argues

he does not), the aforementioned statute does not apply to the instant matter because the

transaction at issue does not, either in form or substance, constitute an assignment.  Objection at

14-16, 21-23.  First, under the Agreement, the property laws of California must determine

whether an actual assignment existed.  *Id.* at 15.  Under California law, according to SICO, one

must look to the intent of the parties as demonstrated in their Agreement.  As the Agreement

neither contains any express assignment language nor indicates that an assignment is intended,

SICO argues no such transaction occurred.  *Id.* at 16.  Further, Mr. Dunlap retained control over

and the ability to redirect his Pension Payments until the payments were deposited into the

designated account and only then did SICO's security interest in the funds attach.  *Id.* at 14-15,

17, 20.  SICO suggests that the Agreement represented a contractual relationship regarding Mr.

Dunlap's use of his Pension Payments once the funds were distributed.  SICO thus contends that

37 U.S.C. § 701(c)[12] should not be read so broadly as to restrict a retiree's use of funds after those funds are received by the retiree.  Objection at 17-18, 20.  In other words, once the government deposits the money into the payee's bank account, the government cannot control any further disposition of the funds, and, therefore, 37 U.S.C. § 701(c) cannot invalidate SICO's contract with Mr. Dunlap.  Objection at 21 (citing *Structured Invs. Co. v. Weber* (*In re Weber*), Case No. BK07-82354-TJM, 2009 WL 983311, at *3 (Bankr. D. Neb. April 10, 2009)).  This rationale was apparently also adopted by the court in *In re Heald*, Case No. 03-03127-8-JRL (Bankr. E.D.N.C. Aug. 8, 2003) (unpublished decision).  *Heald*, a case filed under Chapter 13 of the Bankruptcy Code, held, according to SICO, that "once the funds reach the hands of the beneficiary, [the beneficiary] is free to enter into [an] agreement without the interference of the [government agency]."  Objection at 19 (quoting *In re Heald*, Case No. 03-03127-8-JRL).

As to the standing issue, SICO asserts that Mr. Dunlap may not assert the prohibition on assignments of military retirement pay against the assignee and that only the "sovereign" may raise such a defense.  *Id*. at 21-22.  SICO discusses, as an example, the assignment of claims against the United States (*see Martin v. Nat'l Sur. Co.*, 300 U.S. 588 (1937)), as support for this argument, asserting that such provisions are designed to protect the federal government from instances of fraud, undue influence, or duress, and, therefore, only the government may raise such defenses.  Objection at 22.  Within the same argument, SICO argues that Mr. Dunlap should be estopped from invoking the anti-assignment provision to his benefit when he ignored that same provision when he entered into the Agreement with SICO.  *Id*. at 23-24 (citing *In re Terry*,

---

[12] SICO cites to and discusses 37 U.S.C. § 701(c), not § 701(a).  Section 701(c) states, "An enlisted member of the Army, Navy, Air Force, or Marine Corps may not assign his pay, and if he does so, the assignment is void."  It is undisputed that Mr. Dunlap is a retired Air Force officer, maintaining the rank of Major at the time of his retirement.  Summary Judgment Motion ¶ 8; Dunlap Affidavit ¶ 4; Objection ¶¶ 1, 3; Covey Affidavit ¶¶ 3, 5.  Section 701(a) addresses the ability of officers to transfer and assign pay and, therefore, is the applicable code section.

245 B.R. 422 (Bankr. N.D. Ga. 2000)).

SICO contends that neither *Moorhous* nor the other cases cited by Mr. Dunlap apply here and that all of the cases he cites are either distinguishable or represent "outdated" case law. *See id.* at 16-20. The debtor in *Moorhous* was found not to have committed fraud, whereas in the instant matter, SICO contends, Mr. Dunlap's actions constitute fraud and conversion. *Id.* at 17. The equities also differ according to SICO, as the *Moorhous* creditor's claim was secured by real property, thus providing the creditor with an alternative remedy. Here, SICO argues, it does not have any remedies in addition to those asserted in the Amended Complaint. *Id.*

Similarly, SICO challenges Mr. Dunlap's interpretation of the decision in *Bowden v. Structured Investments Co.* (*In re Bowden*), 315 B.R. 903 (Bankr. E.D. Wash. 2004). *Bowden*, SICO claims, concluded that the agreement at issue did not create a trust because no trust res existed. The *Bowden* court found that the military retirement pay represented neither an entitlement nor a vested right held by the retiree and, therefore, no trust res existed. Objection at 18 (citing *In re Bowden*, 315 B.R. at 908). SICO takes issue with the *Bowden* decision's apparent lack of consideration of the Supreme Court decision in *Barker v. Kansas*, 503 U.S. 594 (1992), which SICO interprets as holding that military retirement pay is considered deferred pay for past services. Objection at 18 (quoting *Barker*, 503 U.S. at 605). In light of *Barker*, SICO argues, the retirement benefits are already "earned" at the time the service member retires and, therefore, constitute the trust res the *Bowden* court found to be lacking.[13] *Id.*

---

[13] SICO also argues that *Bowden* would decided differently under the current Department of Defense regulations regarding allotments, which allows discretionary allotments including those for the payment of car loans, rent, or other consumer loans. Objection at 19. The regulations SICO cites, however, are from Volume 7A of the department's Financial Management Regulations, entitled "Military Pay Policy and Procedures – Active Duty and Reserve Pay." Like Mr. Dunlap, the debtor in *Bowden* was retired from the military, and, thus, the regulations in Volume 7B, "Military Pay Policy and Procedures – Retired Pay," apply. To be sure, Volume 7B does contain similar provisions to those found in Volume 7A regarding allotments (*see* Dep't of Def. Fin. Mgmt. Regulations 7B, ch. 19, at 190302). In any event,

SICO further argues that cases such as *Johnson v. Wing*, 178 F.3d 611 (2d Cir. 1999), should guide this Court's decision. Objection at 20. According to SICO, *Johnson* stands for the proposition that when one voluntarily assigns pay received from the federal government (in that case, Social Security benefits), such transaction cannot be undone upon a challenge of the assignability of those benefits. *Id.* (quoting *Johnson*, 178 F.3d at 615)

SICO sets forth an additional argument—one that it did not raise in its Amended Complaint—that the Agreement with Mr. Dunlap created a "true sale" of his Pension Payments. *Id.* at 23. SICO then detours into an argument regarding equitable assignments. SICO contends that to reach the conclusion that the transaction here constituted a true sale, the Court should find that an equitable assignment arose so as to effectuate the intent of the parties. *Id.* (quoting *Jones v. J.G. Wentworth S.S.C. Ltd. P'ship* (*In re Berghman*), 235 B.R. 683 (Bankr. M.D. Fla. 1999)). SICO relied on Mr. Dunlap's representation that he would turn over his Pension Payments, only later to have Mr. Dunlap direct those payments into an account other than the one designated by SICO, facts that SICO alleges coincide with those in *Berghman* and dictate the same result in the instant matter—the declaration of an equitable assignment. Objection at 24.

SICO then returns to the "true sale" path of its argument, maintaining that the five (5) factors for finding a true sale, as set forth in *Bear v. Coben* (*In re Golden Plan of California, Inc.*), 829 F.2d 705 (9th Cir. 1987), and adopted by the Court of Appeals for the Fourth Circuit (*see In re Carolina Utilities Supply Co.*, 118 B.R. 412 (Bankr. D.S.C. 1990)), are satisfied here. Objection at 24. Specifically, SICO asserts that the language of the Agreement demonstrates a transfer of interest in the Pension Payments to SICO. Second, SICO asserts that the Agreement does not provide recourse against Mr. Dunlap, further establishing the parties' intent that the

SICO fails to explain how the current regulations would alter the outcome in *Bowden* if that case was decided today.

transfer of interest in the Pension Payments was absolute. *Id*. at 25. The fact that Mr. Dunlap was the initial "collector" of the Pension Payments is of no moment, as Mr. Dunlap, SICO believes, was simply a collection agent for SICO because he was required to remit the payments to SICO immediately. Fourth, SICO equates the risk it undertook in the Agreement with that found in a true sale due to the lack of guarantee that Mr. Dunlap would continue to receive his Pension Payments should his "good standing [with the federal government] . . . be violated." *Id*. at 26. Finally, SICO cites the intent of the parties as evidence that a true sale of the Pension Payments occurred. *Id*. at 26-27. In particular, SICO highlights the language of the Agreement purporting to transfer an interest in the payments and the characterization of SICO's business in the Agreement as that of "buying monthly income streams." *Id*. at 27. As Mr. Dunlap had the opportunity to consult with counsel prior to entering the Agreement, and because he has failed to allege mistake, accident, or fraud by SICO, SICO contends that the Court should find that a true sale occurred. *Id*.

The Court's analysis must begin with determining the true nature of the Agreement between SICO and Mr. Dunlap. The parties concur that they entered into the Agreement.[14] Summary Judgment Motion ¶ 11; Objection ¶ 3. The decision by Judge Mixon of the United States Bankruptcy Court for the Eastern District of Arkansas in *Structured Investments Co. v. Price* (*In re Price*), 313 B.R. 805 (Bankr. E.D. Ark. 2004), greatly aids the Court's analysis. The Agreement and the agreement in *Price* are strikingly similar. The agreements contain virtually identical explanations as to the purpose of SICO's program and a specific statement that the transaction at hand does not constitute a loan. *Id.* at 807; Agreement at 2. Both agreements provide for the payment by SICO of a lump sum in exchange for ninety-six (96) military pension

---

[14] The Agreement is attached (i) to the Summary Judgment Motion as Exhibit A and (ii) to the Objection as Exhibit 6 to Exhibit A.

payments, with SICO withdrawing the ninety-six (96) payments from an account established by the retiree and designated for such purpose. *In re Price*, 313 B.R. at 807; *see* Agreement at 2-4. Both agreements also provide that the number of payments to SICO automatically increases to 120 in the event of any "'disruption, interruption or decrease in those payments caused by the participant . . .'" *In re Price*, 313 B.R. at 807; Agreement at 3. The same clause in the Agreement imposes the same penalty upon Mr. Dunlap in the event of the "elimination" of the payments to SICO. Agreement at 3.

In addition, the agreements require the collateral assignment of life insurance to SICO (*id*. at 5-6; *In re Price*, 313 B.R. at 808); command that any breach causes the remaining payments to become immediately due and payable (*In re Price*, 313 B.R. at 808; Agreement at 9); and gives SICO a security interest in the account into which the retirement payments are deposited (*In re Price*, 313 B.R. at 808; Agreement at 7). Both Messrs. Price and Dunlap covenant in their respective agreements that they had not otherwise disposed of their rights to receive their retirement payments and to do so results in the perpetration of a fraud upon SICO. *In re Price*, 313 B.R. at 808; Agreement at 7. Both agreements further provide that, in the event the retiree files for bankruptcy protection, the obligation under the agreement and the security interest held by SICO will be "excluded" from the bankruptcy estate. *In re Price*, 313 B.R. at 808; Agreement at 7. Each agreement also requires the retiree to acknowledge the parties' agreement that it was not their intent that the agreement constitute an assignment or sale of benefits to the extent the assignment or sale may be prohibited by law. *In re Price*, 313 B.R. at 808; Agreement at 13. Finally, each agreement provides that California law would govern any disputes arising out of the agreement and that, unless SICO filed suit elsewhere, venue would be located in Orange County, California. *In re Price*, 313 B.R. at 808-09; Agreement at 14.

With no significant differences present in the agreements, this Court concurs with Judge

Mixon's analysis and concludes that the Agreement represents a transaction prohibited by 37

U.S.C. § 701(a).  *In re Price*, 313 B.R. at 809.[15]  In so deciding, Judge Mixon relies on the

reasoning set forth in the Fourth Circuit's decision in *In re Moorhous* and its interpretation of 37

U.S.C. § 701.  *Moorhous* involved a retired Air Force Colonel who attempted to exchange

certain of his future retirement payments with the Dorfmans for a lump sum payment of

$125,000.00.  *In re Moorhous*, 108 F.3d at 52.  Colonel Moorhous agreed to establish a bank

account into which his Air Force retirement payments would be deposited and from which

payments would be transferred to the Dorfmans each month.  *Id*. at 53.  When Colonel Moorhous

began experiencing financial difficulties, he directed that his retirement checks be deposited into

a different account.  *Id*. at 54.  The Dorfmans then filed suit against him in the United States

District Court for the Eastern District of Pennsylvania.  Two months later, Colonel Moorhous

filed his petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court

for the Eastern District of Virginia, thereby staying the Pennsylvania litigation.  Prior to Colonel

Moorhous receiving his discharge, the Dorfmans filed a complaint in the Bankruptcy Court,

seeking a declaratory judgment that Colonel Moorhous breached their agreement; an injunction

to require Colonel Moorhous to pay the retirement payments missed; reinstatement of the direct

deposit; damages for breach of contract and conversion; and the imposition of a constructive

trust. *Id*.

Judge Mitchell of this Court granted summary judgment in favor of Colonel Moorhous

on the breach of contract claim and, after a two-day trial on the merits, found in favor of Colonel

Moorhous on the remaining issues.  *Id*.  Judge Mitchell focused on the effect of 37 U.S.C. § 701

---

[15] Judge Mixon noted that, while the debtor in *Price* was a retired enlisted service member, the rationale
adopted in *Moorhous* as to commissioned officers should apply equally to enlisted service members.

in his ruling. While noting that the statute is "far from crystal clear," Judge Mitchell concluded that Congress intended 37 U.S.C. § 701(a) "to permit assignments only of pay that is due and payable at the time the assignment is made." *Dorfman v. Moorhous* (*In re Moorhous*), 180 B.R. 138, 150 (Bankr. E.D. Va. 1995). The effect of this interpretation, then, is "that while an assignment might address pay becoming due in the future, such assignment would be enforceable only as to pay that had become due and could be revoked at any time with respect to pay not yet due." *Id.* Judge Mitchell found that such interpretation is consistent with other Department of Defense Financial Management Regulations permitting allotments to be canceled at any time. *Id.* at 150-51.

On appeal, the Court of Appeals for the Fourth Circuit affirmed Judge Mitchell's ruling and reasoning regarding the interpretation of the operative phrase "when due and payable." *In re Moorhous*, 108 F.3d at 55. Noting that other circuits had adopted that construction, *id.* (citing *Smith v. Commanding Officer*, 555 F.2d 234, 235 n.1 (9th Cir. 1977); *United States v. Smith*, 393 F.2d 318 (5th Cir. 1968)), the Fourth Circuit explained how public policy justifies Judge Mitchell's interpretation of 37 U.S.C. § 701(a). The prohibition on public officers to assign unearned wages arose, according to the Fourth Circuit, from "the concern that unforeseen financial embarrassments, following the assignment of an officer's future pay, may prevent the officer from rendering the services for which he has been retained." *In re Moorhous*, 108 F.36 at 55. Because an attempted assignment of military retirement pay is invalid, a retiree cannot assign or transfer ownership of his retirement payments to another party if those payments are not due and payable at the time the parties enter into the transaction. *Id.*

This Court finds that the reasoning of the United States Court of Appeals for the Fourth Circuit in *Moorhous* controls in the present case. The statute, as well-characterized by Judge

Mitchell, is an "absolute prohibition on assignments" and transfers of pay.  *In re Moorhous*, 180 B.R. at 150.  As a result, the instant Agreement's attempt to transfer rights in Mr. Dunlap's Pension Payments when those payments were not yet due and payable was in contravention of 37 U.S.C. § 701(a) because, at the time the Agreement was entered into, Mr. Dunlap had no rights in his future Pension Payments to convey to SICO.

SICO makes several arguments, apparently meant to be lodged in the alternative, as to the nature of the transfer.  SICO contends that the Court should find that the transaction is either a true sale or an assignment; or by virtue of the contract, impose a constructive trust or an equitable lien; or find that an equitable assignment exists.  Setting aside the impropriety of raising additional arguments at the summary judgment stage of the proceedings that were not contained in the Amended Complaint, SICO's argument that the transaction actually constituted a "true sale" in reality frustrates its overall argument.  Regardless of how SICO desires this Court to characterize the transaction between it and Mr. Dunlap, the Agreement was, at the most basic level, an attempted permanent transfer of rights that Mr. Dunlap did not possess.  SICO has made no argument that Mr. Dunlap was in fact entitled to the future Pension Payments at the time the parties entered into the Agreement.  While certainly Mr. Dunlap may have had the expectation that those payments would continue, that expectation was not a property right subject to conveyance.

SICO suggests that the Agreement was purely contractual in nature and dealt only with Mr. Dunlap's use of the Pension Payments after he received them, an argument apparently adopted by the courts in *Structured Investments Co. v. Weber* (*In re Weber*), Case No. BK07-82354-TJM, 2009 WL 983311, at *3 (Bankr. D. Neb. Apr. 10, 2009), and *In re Heald*, Case No. 03-03127-8-JRL (Bankr. E.D.N.C. Aug. 8, 2003) (unpublished opinion).  The substance and the

form of the Agreement, however, belies otherwise.  Just as Judge Mixon found in the *Price* case,

the Agreement (drafted by SICO and therefore construed against it, *see Cappo Mgmt. V, Inc. v.*

*Britt*, 282 Va. 33, 711 S.E. 2d 209, 211 (2011)), was not merely a promise by Mr. Dunlap to

remit his Pension Payments to SICO, but, rather, an attempted transfer of Mr. Dunlap's rights in

those payments to SICO *before* the payments were "*due and payable*," i.e., before Mr. Dunlap

was entitled to such payments and, thus, prior to his obtaining rights to and in those payments.

*See* Objection, Exhibit A, Agreement (Exhibit 6 to Exhibit A), at 2 ("SICO agrees to purchase

and [Mr. Dunlap] agrees to sell to SICO certain periodic payments."); *id.* ("[Mr. Dunlap] is

selling his/her right to receive the periodic payment."); *id.* at 4 ("[Mr. Dunlap] may contract to

sell all or a portion of [his] current pension payment."); *id.* at 7 ("[Mr. Dunlap] has relinquished

his . . . right to receive that portion of the Pension Payment purchased by SICO.  Thus, that

portion of the Pension Payment purchased and sold pursuant to the terms of this Agreement . . .

are [*sic*] no longer assets of [Mr. Dunlap].").  SICO has failed to show that *Moorhous* would be

decided differently if before the Court today.  SICO's purported lack of alternative remedies

should this Court find that *Moorhous* applies is of no moment, as such cannot be a basis for this

Court to ignore the import and applicability of *Moorhous* and 37 U.S.C. § 701(a).  In addition to

the fact that it addressed government benefits in a wholly different context (that of Social

Security benefits), the further result of the applicability of the *Moorhous* decision is that SICO's

reliance on *Johnson v. Wing*, 178 F.3d 611 (2d Cir. 1999), discussed *supra*, necessarily fails.

SICO's standing argument is misplaced chiefly because the Court is bound to consider

the applicable statutory sections when analyzing this case.  Therefore, even if this Court were to

conclude that Mr. Dunlap did not have standing to assert the prohibition of the assignment or

transfer of military pay before it is due and payable pursuant to 37 U.S.C. § 701 (which this

Court specifically does not find), this Court has a duty to consider whether the transaction at issue was permissible under the applicable law.

SICO urges the Court to examine the Agreement under the provisions of California law. This argument fails, of course, since state law is necessarily and naturally preempted to the extent it conflicts with any federal statute. *PLIVA, Inc. v. Mensing*, ___ U.S. ___, 131 S. Ct. 2567, 2577 (2011). Thus, even if the Agreement was determined to be a valid assignment or transfer of property rights under California law, such finding would clearly conflict with and be invalid in light of the federal prohibition on the assignment or transfer of Mr. Dunlap's Pension Payments before those payments are due and payble.

SICO argues that the court in *Bowden* failed to consider the Supreme Court's *Barker* decision. Such argument by SICO fails in the instant matter, as the *Moorhous* court (at both the trial and appellate court levels) discussed *Barker* but instead, for the reasons stated, applied 37 U.S.C. § 701(a) in finding that a military retiree cannot assign retirement pay prior to that pay being due and payable. *In re Moorhous*, 108 F.3d at 54-55; *In re Moorhous*, 180 B.R. at 148. Further, the issue in the *Barker* case was a discrete one: whether Kansas's decision to tax the benefits received by military retirees violated 4 U.S.C. § 111, which permits states to tax the compensation of federal government employees so long as that tax does not discriminate against the employee because of the source of compensation. *Barker*, 503 U.S. at 596. The Supreme Court found that, in the context and for the purposes of state taxation, military retirement benefits are considered deferred pay for past services. *Id*. at 605. This decision is limited, obviously, to the analysis before the Supreme Court in *Barker*, and SICO has advanced no argument to support application of the *Barker* rationale to the current case.

The Defense Department regulations cited by SICO address the allotment procedures for

active duty and reserve military members.  SICO fails to connect how these regulations should be construed so as to permit the transaction here, and the Court likewise finds no such connection exists.  Instead, the Court agrees with Mr. Dunlap's assessment that the Agreement does not comply with the regulations regarding allotments so as to except the transaction at issue from the prohibition on assignments and transfers contained in 37 U.S.C. § 701(a).

The additional cases cited by SICO for the proposition that prohibitions on the assignment of pay are not always absolute also fail to support the argument that this Court should find that an exception exists to *Moorhous* and 37 U.S.C. § 701(a) that applies in the instant matter.  Just as Judge Mixon found, the cases cited by SICO are distinguishable.  *See In re Price*, 313 B.R. at 810.  *In re Terry* and *In re Berghman* both involved nongovernmental annuity payments not subject to the assignment prohibitions found in 37 U.S.C. § 701.  The unreported decision of *In re Heald* is distinguishable because it addressed disability benefits payable to a veteran, which are governed by a different statute.  *See In re Price*, 313 B.R. at 810.  Further, *Heald* concerned issues of regular income and bad faith filing in the Chapter 13 context, not the issue of dischargeability of a debtor's obligations in the context of Chapter 7 of the Bankruptcy Code.  *Id.*  Finally, the ruling in *In re Weber* was based upon the court's assessment that the deposit of the funds into the designated bank account took precedent over the terms of the agreement and the court's conclusion that the agreement in that matter was governed by California law, *see In re Weber*, 2009 WL 983311, at *3, conclusions contrary to those reached in the instant matter for the reasons stated above.

As the Court has found that SICO has no property interest in Mr. Dunlap's Pension Payments that were not due and payable at the time the Agreement was entered, and finding that no exception to *Moorhous* exists so as to permit the transaction between the parties, the Court

finds that summary judgment should be entered for Mr. Dunlap as to the entire relief sought in

Count One of the Amended Complaint and that Count One should be dismissed.[16]

### D.   Count Two: § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge "any debt . . . for money, property, services,

or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a

false representation, or actual fraud, other than a statement respecting the debtor's or an insider's

financial condition . . . ."   This Court has examined the nondischargeability of debts in the

context of this section numerous times, most recently in *Ocean Equity Group v. Wooten* (*In re*

*Wooten*), 423 B.R. 108 (Bankr. E.D. Va. 2010).   As set forth in *Wooten*, to prove actual fraud, an

objecting creditor must establish that the debtor made a false representation, knew that the

representation was false, and intended to deceive the creditor.   The creditor must also establish

his own justifiable reliance on the representation and that he was damaged as a proximate result

of the false representation.   *In re Wooten*, 423 B.R. at 121 (quoting *Nunnery v. Rountree* (*In re*

*Rountree*), 478 F.3d 215 (4th Cir. 2007); *Fernandez v. Fisher* (*In re Fisher*), Adv. No. 08-05104,

2009 WL 2971581, at *3 (Bankr. E.D. Va. Sept. 11, 2009)).   As Chief Judge Krumm recently

opined, "[t]o satisfy the representation element, the creditor 'must demonstrate that the

representation was one of existing fact and not merely an opinion, expectation or declaration of

intention. A mere promise to repay, and nothing more, does not rise to the level of a

representation under § 523(a)(2).'"   *Williams v. White* (*In re White*), 412 B.R. 860, 866 (Bankr.

---

[16]   To the extent SICO's Amended Complaint could be construed as seeking the entry of declaratory
judgment with regard to the security interest Mr. Dunlap admits SICO took in the account into which the
Pension Payments were to be deposited (*see* Objection ¶ 5; *id*. at 15; *id*., Exhibit A, at 74), the Court
would find that Mr. Dunlap is also entitled to the entry of summary judgment on this argument.   SICO
admits that its security interest was only in the designated deposit account.   SICO has not shown that a
genuine dispute of material fact exists on this point.   For the reasons stated, SICO had no property interest
in the Pension Payments.   As a result, SICO's security interest in the deposit account is of no moment, as
the lack of funds in the account renders the security interest meaningless.

W.D. Va. 2009) (quoting *Rowe v. Showalter* (*In re Showalter*), 86 B.R. 877, 880 (Bankr. W.D. Va. 1988)).   The objecting creditor has the burden of proof in an action brought under § 523(a)(2)(A), and the standard of proof is preponderance of the evidence.   *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991).

In the Amended Complaint, SICO asserts that Mr. Dunlap obtained the Lump Sum from it by false pretenses, false representations, and/or actual fraud.   Amended Complaint ¶ 40. Specifically, SICO alleges that Mr. Dunlap represented that the full amount of the Lump Sum would be used to pay in full various bills and credit cards.   *Id*. ¶¶ 37-38.   SICO asserts that Mr. Dunlap did not in fact use the entirety of the money to pay in full the obligations he disclosed to SICO, that he did not intend to use the funds in that manner, and that he knew this representation was false.   *Id*. ¶¶ 39-40.   SICO asserts that it relied on that representation in deciding to transfer the Lump Sum and was damaged as a result.   *Id*. ¶¶ 41-42.   In his Answer, Mr. Dunlap denies all allegations contained in Count Two of the Amended Complaint.   Answer ¶¶ 36-44.

In his Summary Judgment Motion, Mr. Dunlap agrees that he represented to SICO that he would use the funds to pay his various creditors.   Mr. Dunlap argues, however, that there is no genuine dispute as to any material facts regarding Count Two because SICO cannot produce any evidence to demonstrate that he did not use the Lump Sum for the purpose he represented. Summary Judgment Motion at 10.   Mr. Dunlap centers this argument on SICO's requirement that he mail the checks and payment stubs to SICO for their subsequent transmission to his creditors, thereby making SICO was aware of the exact amount of money being sent to those specific creditors.   *Id*.   In support, Mr. Dunlap attaches to his motion a copy of SICO's responses to his requests for admission, wherein SICO admits Mr. Dunlap forwarded checks totaling $94,895.82

and ten payment stubs, which SICO received and mailed.  *Id*. ¶¶ 17-18 (citing Summary Judgment Motion, Exhibit B, Requests for Admission 9-16, 18-19, 21-30).

Mr. Dunlap also attaches to his motion a copy of his bank records demonstrating that the checks forwarded to SICO for payment to his creditors were in fact negotiated by the creditors. *See id*. Exhibit D, Bank Statement.  Therefore, Mr. Dunlap argues that SICO cannot establish that a genuine dispute of a material fact exists because it cannot put forth any evidence that the Lump Sum was used in a manner other than that which he represented.  *Id*. at 10.  As a result, Mr. Dunlap argues, SICO cannot satisfy its burden as to the remaining elements under § 523(a)(2)(A).  Summary Judgment Motion at 11.

SICO attempts to rebut Mr. Dunlap's argument by asserting that the Dunlaps wrongfully diverted Mr. Dunlap's Pension Payments for their own use, thereby converting SICO's funds. Objection ¶ 24.  SICO also asserts that Mr. Dunlap did not use the entirety of the Lump Sum to pay the debts as he had represented to SICO.  *Id.* at 29-30; *see id*. ¶¶ 23, 29.  Instead, SICO asserts that the Dunlaps obtained the Lump Sum as a result of fraud and converted or "indirectly use[d]" the money for their own use, in that they paid off their credit cards so that they could then use their credit cards for personal expenses without disclosing their intent to do so to SICO. *Id*. at 29-30.  To this end, SICO argues that Mr. Dunlap failed to inform it that the funds would be used "indirectly for other things, including living expenses . . . ."  *Id*. at 30.  To support these arguments, SICO cites to Mr. Dunlap's deposition, which is attached to the Objection as Exhibit A.  SICO also cites to the various exhibits utilized during Mr. Dunlap's deposition, which are also among the Objection's exhibits and include Mr. Dunlap's responses to SICO's discovery requests, the Agreement, and several e-mail communications between Mr. Dunlap and a representative of SICO prior to the Agreement being signed.

At the hearing on the Summary Judgment Motion, Mr. Dunlap's counsel cited to several documents signed by Mr. Dunlap stating that the Lump Sum would be used for debt consolidation purposes.  Tr. at 10.  According to Mr. Dunlap's counsel, the chart in SICO's Objection, despite its mathematical flaws, again demonstrates SICO's admission that Mr. Dunlap used over $94,000.00 of the Lump Sum to pay his creditors.  *Id*. at 11.

Counsel for SICO reasserted its position that Mr. Dunlap made a false representation by failing to use the entire amount of the Lump Sum to pay off or to reduce his debts.  *Id*. at 25.  SICO also relied heavily upon the argument that Mr. Dunlap improperly incurred additional credit card debt after using the Lump Sum to pay down those same credit cards, but SICO's counsel was unable to point to any specific provision within the Agreement containing such restriction other than Mr. Dunlap's general promise to repay the funds.  *Id*. at 24-25.  Mr. Dunlap's counsel countered that nothing within the papers signed by Mr. Dunlap prohibited him from using the credit cards he paid down with the Lump Sum or from incurring new or additional debt while he was repaying the Lump Sum to SICO.  *Id*. at 11-12.

Mr. Dunlap has met his burden of establishing the absence of any genuine dispute of material fact regarding SICO's allegations that he obtained the Lump Sum by either false pretenses, a false representation, or actual fraud.  Mr. Dunlap represented that he would use the Lump Sum to consolidate and pay down his debts.  To utilize the Lump Sum in this fashion, Mr. Dunlap was required by the Agreement, as admitted by SICO in response to Mr. Dunlap's request for admission, to forward the checks and related payment stubs to SICO.  SICO specifically admits that Mr. Dunlap met this condition by forwarding checks totaling $94,895.82 and ten (10) payment stubs to SICO, which SICO received and mailed.  Summary Judgment Motion ¶¶ 17-18 (citing Summary Judgment Motion, Exhibit B, Requests for Admission 9-16,

18-19, 21-30).   Mr. Dunlap has demonstrated, by attaching a copy of his bank records to the

Summary Judgment Motion, that the checks forwarded to SICO were in fact negotiated by the

creditors.  *See id.* Exhibit D, Bank Statement.

As to SICO's first argument that Mr. Dunlap converted the Pension Payments, the Court

finds that this argument is more properly addressed in the context of SICO's claims under 11

U.S.C. § 523(a)(6) and will be discussed *infra*.

To address the totality of SICO's other arguments, a review of the documents attached to

the Objection is necessary to determine if SICO has satisfied its burden of showing that a

genuine dispute exists as to any material fact(s) regarding any of the essential elements of Count

Two and upon which it would bear the burden of proof at trial.  For the reasons stated below, the

Court concludes that SICO has failed to meet its burden and that Mr. Dunlap is entitled to

summary judgment as to Count Two.

Several documents submitted by SICO contain Mr. Dunlap's specific representation

regarding his intended use of the Lump Sum.  Paragraph 10.1 of the Agreement, attached as

Exhibit 6 to Mr. Dunlap's deposition,[17] incorporates the Agreement's Exhibit A.  Exhibit A to

the Agreement states Mr. Dunlap will use the "lump sum payment" for "Debt Consolidation."

The "Companion Letter" to the Agreement, exhibited with the Objection as Exhibit F and signed

by both Mr. and Mrs. Dunlap, states, "You have told us that the primary use for these funds is

**Debt Consolidation.**"  *See also* Objection, Exhibit A, Financial Information Form (Exhibit 8 to

Exhibit A) (noting that the funds were to be used for "Debt Consolidation").

Mr. Dunlap's deposition testimony, in conjunction with the exhibits attached thereto, do

not support SICO's argument that Mr. Dunlap did not use the funds in the manner he

represented.  During the deposition, in response to a question by SICO's counsel regarding the

---

[17] Mr. Dunlap's deposition is attached to the Objection as Exhibit A.

state of his financial condition when he entered into the Agreement, Mr. Dunlap responded, in pertinent part, "[T]he purpose of getting a lump sum up front was to pay off the high interest credit into a lower single payment." Objection, Exhibit A, at 70. Mr. Dunlap's testimony is consistent within his deposition. *See id*. at 79-80 (confirming that he (Mr. Dunlap) would use the Lump Sum to reduce the balances on his credit cards).

During his deposition, Mr. Dunlap confirmed that SICO deposited approximately $101,000.00 into his bank account and that the checks he forwarded to SICO to pay his creditors totaled approximately $94,000.00. *Id*. at 104. When asked by SICO's counsel about the disposition of the remaining funds, Mr. Dunlap stated he did "[e]xactly what I told SICO was going to happen to it. I held it back as a[n] . . . operating reserve." *Id*. Mr. Dunlap affirmed that he used the "operating reserve." *Id*. He further explained that he informed SICO in August 2008 that he would be using a portion of the Lump Sum for an operating reserve "when I told them I was going to use 70- or 80,000 toward paydown and another 25-, 30,000 for operating reserve. Just prior to funding, we decided that we would use 94,000 instead to pay down credit – credit card[s]. So I told them twice." *Id*. at 105.

The exhibits SICO used during Mr. Dunlap's deposition, which it submitted to the Court in support of their Objection, are also illuminating regarding the specific representations Mr. Dunlap made to SICO's representatives while SICO determined whether it would advance the Lump Sum to him. An e-mail dated August 4, 2008, sent at 1:29 p.m. by Mr. Dunlap to an individual named Karren Groman contained the following statement: "I thought you would like to know that I plan to use the advance . . . to retire another $70,000 – $80,000 and set aside the balance for an 'operating reserve' to carry us through the slow real estate months." *Id*. E-mail dated Aug. 4, 2008, at 1:29 p.m from Mr. Dunlap (Exhibit 11 to Exhibit A). Ms. Groman is

identified in the signature line of an e-mail she sent to Mr. Dunlap on August 4, 2008, as

"Contract Manager" for SICO.  *Id*. E-mail dated Aug. 4, 2008, at 3:05 p.m from Karren Groman

(Exhibit 11 to Exhibit A).  In that e-mail, Ms. Groman asks Mr. Dunlap to "[p]lease itemize . . .

what you will be paying off with our funds and how much you will have in reserve."  *Id*.  In

response to Ms. Groman's request, Mr. Dunlap sent a second e-mail to her on August 4, 2008, in

which he more specifically set forth his intended use for the Lump Sum: "With the advance on

military retirement, we will pay off approximately $60K owed to American Express.  We will

then apply another $10–20K to our three remaining credit cards.  The balance of the advance will

go primarily to a reserve fund as stated earlier."  *Id*. E-mail dated Aug. 4, 2008, at 4:55 p.m from

Mr. Dunlap.

This Court has previously held that:

> Representations are either express or implied.  "A false representation is
> an express misrepresentation, while a false pretense refers to an implied
> misrepresentation or 'conduct intended to create and foster a false
> impression.'" . . .
>
> . . . .
>
> . . . [A] misrepresentation occurs when funds are entrusted to a debtor for
> a specific purpose, and the debtor has no intention of using the money for that
> purpose.

*Elrod v. Bowden* (*In re Bowden*), 326 B.R. 62, 82-83 (Bankr. E.D. Va. 2005) (quoting *Nat'l*

*Bank of N. Am. v. Newmark* (*In re Newmark*), 20 B.R. 842, 854 (Bankr. E.D.N.Y. 1982); citing

*KMK Factoring, L.L.C. v. McKnew* (*In re McKnew*), 270 B.R. 593, 619 (Bankr. E.D. Va. 2001))

(remainder of citations omitted).  In the instant matter, the deposition exhibits cited by SICO do

not conflict, but rather, are consistent, with Mr. Dunlap's representation as to the proposed use of

the funds—debt consolidation—contained in the Agreement, "Companion Letter" to the

Agreement, and the Financial Information Form completed by Mr. Dunlap, and therefore they do

not establish a genuine dispute of a material fact.  *See* Objection, Exhibit A, Agreement (Exhibit 6 to Exhibit A); *id*. Financial Information Form (Exhibit 8 to Exhibit A); *id*. Exhibit F, Companion Letter.  The term "debt consolidation" is defined by Black's Law Dictionary as "[t]he replacement of multiple loans from one or more lenders with a single loan from one lender, usually with a lower monthly payment and a longer repayment period."  Black's Law Dictionary (9th ed. 2009).  This definition, as well as the common understanding of the process of debt consolidation, encompasses the represented purpose of the transaction between SICO and Mr. Dunlap.

The cited deposition exhibits make it abundantly clear that there is no genuine dispute of material fact with regard to the representation made by Mr. Dunlap to SICO during the negotiation phase of the transaction as to his intended use of the Lump Sum.  The record demonstrates that SICO mischaracterized the true nature and substance of Mr. Dunlap's representation within its Amended Complaint.  Mr. Dunlap specifically volunteered to Ms. Groman that, while a majority of the Lump Sum would be used to reduce or pay in full certain debts, a portion of the funds would be retained to fund an "operating reserve," as Mr. Dunlap termed it.  Upon further inquiry by SICO's own agent, Ms. Groman, Mr. Dunlap provided additional information as to the approximate amounts that would be used toward debt repayment and the amount he would retain in a reserve account.  The record also reflects that Mr. Dunlap used more of the funds to pay toward his debts than he represented, leaving him with a smaller "operating reserve" than he previously anticipated.  Neither the e-mails nor any other exhibits proffered by SICO demonstrate that Mr. Dunlap ever represented that he would use the entire amount of funds toward his debt payments.  It is undisputed that SICO was aware of the exact amount ($94,895.82) Mr. Dunlap used to pay his creditors because SICO required him to

forward to it the checks and the payment stubs for the creditors being paid with the Lump Sum, which checks and payment stubs it mailed to those creditors.  Summary Judgment Motion ¶¶ 16-17, 19; Objection ¶¶ 19-20.

The Court must also address SICO's additional argument under the § 523(a)(2)(A) count, made both in its Objection and during the hearing on the Summary Judgment Motion—that Mr. Dunlap misrepresented his intent to repay the Lump Sum.  Specifically, SICO asserts that Mr. Dunlap did not use the Lump Sum as represented because he "indirectly use[d]" the money to pay off certain credit cards so that he and Mrs. Dunlap could then use their credit cards for personal expenses without disclosing their intent to do so to SICO.  Objection at 2, 29-30; Tr. at 26.

This Court has previously held that "'a misrepresentation of intention can constitute fraud, although mere inability or failure to perform is not, in itself, sufficient evidence of fraudulent intent.'" *Ocean Equity Grp. v. Wooten* (*In re Wooten*), 423 B.R. 108, 121 (Bankr. E.D. Va. 2010) (quoting *Thomas Somerville Co. v. Slaughter* (*In re Slaughter*), Adv. No. 95-3023, 1995 WL 506827, at *2 (Bankr. E.D. Va. July 7, 1995)).  To be sure, while intent not to perform can be inferred from a failure to perform, the intent not to perform must be present at the time the future performance is promised.  *Id.* (quoting *Spinoso v. Heilman* (*In re Heilman*), 241 B.R. 137, 150 (Bankr. D. Md. 1999)).  More specifically,

> [a] debtor's subjective belief that he or she intends to perform the contract is germane in those cases where a debtor has *not* made an express misrepresentation of a specific fact that provides a basis for a claim under Section 523(a)(2)(A), but where the creditor nevertheless contends that Section 523(a)(2)(A) applies based on the debtor's alleged implied representation that the debtor intends to perform the contract.

*Ultra Litho, PYT, Ltd. v. Moore* (*In re Moore*), 365 B.R. 589, 605 (Bankr. D. Md. 2007), *aff'd*, No. 08-1508, 2009 WL 3359207 (4th Cir. Oct. 15, 2009) (unpublished per curiam decision).

Therefore, even if the Court were to consider this additional argument as properly made for the first time at the summary judgment stage, SICO has proffered no evidence to support that a genuine dispute exists as to Mr. Dunlap's alleged intent not to repay SICO at the time the promise to repay was made.  At the hearing on the Summary Judgment Motion, upon specific inquiry from the Court, counsel for SICO was unable to cite to a specific provision within the Agreement restricting Mr. Dunlap from incurring additional debt while in repayment status with SICO.  The Court has found no such restriction in the Agreement, and none can be inferred from any of the exhibits attached to the Objection so as to demonstrate the existence of a genuine dispute of material fact on this issue.

As SICO, the nonmoving party, has not made "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* (quoting Fed. R. Civ. P. 56(c)).  As a result, the Court finds that summary judgment should be entered in favor of Mr. Dunlap and that Count Two of the Amended Complaint should be dismissed.

Even if SICO had met its burden on the first element, the Court would still find that Mr. Dunlap is entitled to summary judgment on this count, as SICO has failed to meet its burden for the remaining elements required under 11 U.S.C. § 523(a)(2)(A).  The second element requires SICO to show, at this stage, that a genuine dispute of a material fact exists as to whether Mr. Dunlap knew or should have known that his representation as to the intended use of the Lump Sum was false when he made the representation.  *In re Bowden*, 326 B.R at 86 (citing *KMK*

*Factoring, L.L.C. v. McKnew* (*In re McKnew*), 270 B.R. 593, 619 (Bankr. E.D. Va. 2001);

*Parker v. Grant* (*In re Grant*), 237 B.R. 97, 115 (Bankr. E.D. Va. 1999)).  Nothing in the record

demonstrates that Mr. Dunlap used the Lump Sum in a manner other than that which he

represented to SICO.  He followed SICO's procedure of forwarding to SICO the checks and

payment stubs for the debts to be paid.  Summary Judgment Motion ¶¶ 17, 19; Objection ¶¶ 19-

20.  Mr. Dunlap, therefore, could not have known his representation as to the use of the Lump

Sum to be false.  SICO has produced no evidence to demonstrate a genuine dispute as to a

material fact exists as to this element.

The third element under 11 U.S.C. § 523(a)(2)(A) requires proof that the debtor made the

false representation with the intention of deceiving the creditor.  The requisite intent must exist at

the time the false representation was made and may be inferred from a false representation that

the debtor should have known would induce the creditor.  Subsequent conduct does not

necessarily indicate that the representation was false.  *In re Bowden*, 326 B.R at 86-87 (citing

*Parker v. Grant* (*In re Grant*), 237 B.R. 97, 115 (Bankr. E.D. Va. 1999)).  In its Objection, SICO

contends that "[t]he [Dunlaps] knew that SIC[O] would be displeased and would not give the

[Lump Sum] to the [Dunlaps], had SIC[O] knew [*sic*] the [Dunlaps]' true intention."  Objection

at 30.  SICO offers no evidence to demonstrate a genuine dispute of material fact as to this bold

assertion, and the Court cannot make the permitted inferences in the instant matter because the

evidence shows that Mr. Dunlap did not make a false representation.  As acutely noted by Judge

Waldrep, "[t]he nonmoving party cannot 'create a genuine issue of material fact through mere

speculation or the building of one inference upon another.'"  *In re Smith*, 2006 WL 3333801, at

*7 (quoting *Harleysville Mut. Ins. Corp. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995)).  SICO,

therefore, has failed to carry its burden at summary judgment as to this element.

The same result is dictated for the fourth and fifth elements under 11 U.S.C. § 523(a)(2)(A). In the Amended Complaint, SICO states as follows with regard to the elements of justifiable reliance and proximate damage as a result:

> 41. SIC[O] actually and justifiably relied on the Debtors' representation as to their purpose in obtaining the [Lump Sum].

> 42. SIC[O] has been damaged as a proximate result.

> 43. The Debtors are liable to SIC[O] under the Agreement for the [Lump Sum] they received thereunder and for the obligations under the Agreement to SIC[O].

Amended Complaint ¶¶ 41-43. In the Objection, SICO offers very little comment as to these elements, other than referring to Mr. Dunlap as a sophisticated real estate agent and retired Air Force Major and suggesting that its damages claim is supported by the fact that SICO was repaid very little of the Lump Sum. *See* Objection at 1, 30, 33. Mr. Dunlap admits that he only made twelve payments to SICO and that he made no payments to SICO beginning in December 2009. Summary Judgment Motion ¶¶ 21-22; Dunlap Affidavit ¶¶ 12-13. These statements, however, are inadequate to carry the burden that rests upon SICO of showing that a genuine dispute of material fact exists as to either of these elements.

### E.  Count Three: § 523(a)(2)(B)

Section 523(a)(2)(B) of the Bankruptcy Code excepts from discharge any debt for money, property, services, or credit to the extent obtained by the

use of a statement in writing—

> (i) that is materially false;

> (ii) respecting the debtor's or an insider's financial condition;

> (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to
deceive . . . .

11 U.S.C. § 523(a)(2)(B). The question of whether a written financial statement is false is a

question of fact. This Court has previously defined a materially false statement as "'one that

paints a substantially untruthful picture of a financial condition by misrepresenting information

of the type which would normally affect the decision to grant credit.'" *In re Bowden*, 326 B.R. at

91 (quoting *Riggs Nat'l Bank of Wash., D.C. v Ross* (*In re Ross*), 180 B.R. 121, 127 (Bankr. E.D.

Va. 1994); *I.H. Mississippi Valley Credit Union v. O'Connor* (*In re O'Connor*), 149 B.R. 802,

807 (Bankr. E.D. Va. 1993)). The creditor carries the burden of proof at trial by a preponderance

of the evidence. *See Consol. Bank & Trust Co. v. Dalton* (*In re Dalton*), No. 99-1330, 2000 WL

191850, at *3 (4th Cir. Feb. 17, 2000) ("A creditor attempting to exclude a debt from discharge

under § 523(a)(2)(B) has the burden of proving each of these elements by a preponderance of the

evidence." (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

　　　In the Amended Complaint, SICO asserts that Mr. Dunlap provided materially false

written financial statements to obtain the Lump Sum and that SICO is entitled to a determination

that the debt is nondischargeable as a result. Amended Complaint ¶¶ 46-47. SICO asserts that

Mr. Dunlap failed to disclose certain credit card obligations and in support of this argument

compares the total credit card debt listed on the Dunlaps' Schedule F filed in their bankruptcy

case (which totaled $334,069.42 according to SICO) with the total credit card debt Mr. Dunlap

listed in the written financial statements he provided to SICO ($200,000.00). *Id.* ¶ 48. SICO

also contends that Mr. Dunlap failed to disclose certain monthly expenses. To support this

claim, SICO asserts that the Dunlaps' "monthly expenses in their bankruptcy schedules exceeded

those disclosed to SIC[O] by $8,858.02." *Id.* According to SICO, Mr. Dunlap intended to

deceive it with the false written financial statements, upon which SICO relied and was damaged

as a result.  *Id*. ¶¶ 53, 55.  In his Answer, Mr. Dunlap denies all allegations related to this count.

Answer ¶¶ 45-57.

In his Summary Judgment Motion, Mr. Dunlap argues that SICO can produce no evidence to show that the written financial statements he provided to SICO in July 2008 were false, much less materially false, and, therefore, that there is no genuine issue of material fact for trial.  Summary Judgment Motion at 13.  Mr. Dunlap asserts that no genuine dispute of material fact exists because the unsecured debts listed on Schedule F include the claim of SICO in the amount of $104,354.44.  Mr. Dunlap further contends that, in addition to the form on which he disclosed $200,000.00 in credit card obligations, he also provided SICO with a list of credit card obligations of both Mrs. Dunlap and their corporation, which listed an additional $65,000.00 in credit card debt.  *Id*. at 12.  As to the allegation that his household expenses increased, Mr. Dunlap asserts that the corporate entity utilized by him and his wife for their real estate business ceased operations in September 2009, at which point their business expenses were added to their household expenses and account for the higher expense amount listed on Schedule J.  *Id*. at 12-13.  Even setting aside this explanation, Mr. Dunlap maintains that the expenses disclosed to SICO in July 2008 were accurate at that time and that SICO has submitted no evidence to show that a genuine dispute exists on this point.  *Id*. at 13.

In response, SICO argues, consistent with the Amended Complaint, that Mr. Dunlap's written financial statements were materially false because "there were numerous liabilities which were not disclosed to SIC[O] as indicated" on the Dunlaps' Schedules D, E, and F.  Objection ¶ 21; *see also* Amended Complaint ¶¶ 48, 50.  SICO alleges that Mr. Dunlap has been unable to show that certain debts did not exist before the parties entered into the Agreement because the Dunlaps have not provided evidence that the debts were incurred after the Agreement was

signed. Objection at 32. Even if the debts were incurred after the Agreement was entered, SICO maintains that the Dunlaps, "at the very least . . . incurred more than $200,000 in additional debt between the time [Mr. Dunlap] applied for [the Lump Sum] and the Petition Date (which is approximately 12 months), despite the [Dunlaps'] claim that they cut back on their expenses by almost $60,000." *Id*. at 32-33. SICO again alleges that Mr. Dunlap materially misrepresented his income and expenses when the July 2008 financial statements are compared to the Dunlaps' bankruptcy schedules and, in particular, their Statement of Financial Affairs, which was filed in December 2009. *Id*. at 33. SICO requests the Court deny summary judgment on Count Three and "find from the totality of the evidence that there is [*sic*] material issue as to the fact of SIC[O]'s reliance on the Financial Statements and Financial Information provided by the Dunlaps to SIC[O]." *Id*. at 34.

Mr. Dunlap, in his motion, and SICO, in opposition, cite to the same materials in the record. Those materials demonstrate the following undisputed facts. Mr. Dunlap prepared the written financial statements for SICO in July 2008 and continued to provide written statements concerning his financial condition to SICO through a period ending no later than October 2008, when SICO ultimately advanced the Lump Sum. Mr. Dunlap and SICO entered into the Agreement on October 20, 2008. The Dunlaps filed their bankruptcy petition on December 21, 2009. No less than fourteen months intervened between the execution of the Agreement in October 2008 and the filing of the Dunlaps' bankruptcy petition in December 2009.

The Court first addresses the alleged misrepresentation of liabilities. "Chart 1," which SICO produced and included in its Objection, summarizes SICO's argument and, purportedly, the facts in support of SICO's argument. *See id*. at 7-8. Organized by creditor name, Chart 1 allegedly summarizes the debts disclosed in the July 2008 written financial statements, the debts

listed in the Dunlaps' December 2009 bankruptcy schedules, and the personal checks payable to various creditors issued in October 2008.  SICO calculates the alleged misrepresentation by Mr. Dunlap on the financial statements as the absolute value of (i) the amount payable to a creditor as disclosed on the July 2008 financial statements, less (ii) the amount paid to that creditor by personal check issued in October 2008, less (iii) the amount listed as payable to that creditor on the Dunlaps' bankruptcy schedules.

To begin, certain of SICO's own calculations on Chart 1 are flawed.  With respect to an American Express Gold account ending in 2-0-0-4, for example, the chart represents that Mr. Dunlap disclosed an outstanding debt of $17,000.00 in July 2008.  The chart further represents that the Dunlaps did not use any of the proceeds from the Lump Sum to satisfy this account and listed an unsecured debt on this account in the amount of $1,344.12 on their December 2009 Schedule F.  SICO, however, calculates that the absolute value of $17,000.00 less $1,344.12 equals $84,814.70 and, therefore, asserts that Mr. Dunlap understated this debt on the July 2008 financial statements by $84,814.70.  *Id.*

As another example, with respect to an American Express account ending in 1-0-0-4, the chart purports that Mr. Dunlap disclosed an outstanding debt of $13,200.00 in July 2008.  The Dunlaps applied $5,000.00 of the Lump Sum toward this account in October 2008.  The Dunlaps listed an unsecured debt with regard to the same account in the amount of $9,252.03 on their December 2009 Schedule F.  SICO, however, calculates that the absolute value of $13,200.00 less the sum of $5,000.00 and $9,252.03 equals $17,452.03 and, therefore, contends that Mr. Dunlap understated this debt on the July 2008 financial statements by $17,452.03.  *Id.*  These are just two examples of SICO's miscalculations.

More important, SICO's argument that material facts remain in dispute requires the assumption that (1) certain of the debts listed on the Dunlaps' bankruptcy schedules were due and payable in July 2008; and (2) there was an absence of any material changes in their liabilities between July 2008 and December 2009. SICO's argument very closely follows the "retrojection" rule that trustees often apply to prove the element of insolvency in preference actions under 11 U.S.C § 547. Judge Shelley has summarized the retrojection rule as follows:

> [I]f a debtor was insolvent on the first known date and insolvent on the last relevant date, and the trustee demonstrates the absence of any substantial or radical changes in the assets or liabilities of the debtor between the two retrojection dates, then the debtor is deemed to be insolvent at all intermediate times.

*Matson v. Strickland* (*In re Strickland*), 230 B.R. 276, 284 (Bankr. E.D. Va. 1999). In other words, the financial condition of the debtor on the last retrojection date is probative of the debtor's financial condition on the first known date only to the extent that the debtor's financial condition remained materially unchanged during the relevant period. SICO's argument requires a substantially similar application of logic: if a debtor represents that his liabilities totaled $X$ on the first known date and totaled $X$ plus $Y$ on the last relevant date, and the party in interest demonstrates the absence of any material changes in debt in the interim, then the debts amounting to $Y$ on the last known date should be deemed due and payable on the first known date.

Here, the Dunlaps' liabilities as of December 2009 are probative only to the extent that SICO could demonstrate the absence of any material changes in their liabilities since July 2008. Although SICO has cited materials in the record to show the liabilities represented on the first known date, in July 2008, and on the last known date, in December 2009, SICO has produced no relevant evidence to demonstrate the absence of any material change of debt in the interim so as

to sustain its burden that a genuine dispute of material fact exists.[18]  Without the submission of such information, the Court would have to speculate as to the falsity of the written financial statements—and "[m]ere speculation . . . cannot create a genuine issue of material fact."  *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001).

SICO also argues that certain credit card accounts listed on the Dunlaps' bankruptcy schedules should have been disclosed on the July 2008 financial statements because Mr. Dunlap "testified that from the time he applied for SIC[O] funds up to the Petition Date, he had not opened new credit cards."  Objection ¶ 21.  Even if Mr. Dunlap testified that he had not opened new credit cards in the interim,[19] implying that accounts listed on the Dunlaps' bankruptcy

---

[18] SICO has produced credit card statements apparently in an effort to prove that a genuine dispute of material fact exists as to whether the Dunlaps experienced a material change of debt in the interim.  These statements are offered purportedly in support of its alternative argument—which SICO raises for the first time in its Objection—that the Dunlaps never intended to repay SICO.  The credit card statements, included as an exhibit to SICO's Objection, demonstrate only that, between October 2008 and November 2009, the Dunlaps satisfied $17,827.72 of debt payable on an Advanta account and $19,426.61 of debt payable on a Bank of America account.  Objection, Exhibit D, Mr. Dunlap's Supplemental Responses to Requests for Production of Documents.

[19] In support of its statement that Mr. Dunlap "testified that from the time he applied for SIC[O] funds up to the Petition Date, he had not opened new credit cards," SICO cites to its deposition examination of Mr. Dunlap:

>    Q.    Do you think you incurred substantial debt post --
>
>    A.    Well, I know we did.  That's why we had to seek counsel to file bankruptcy.  We got -- it got to the point where our income just could not sustain our expenses.  No matter how much we cut, the income dropped faster.
>
>    Q.    So if you used those credit cards, it wasn't any new credit cards that you opened?  And we are talking about post U.S. Pension Funds, post signing the agreement.
>
>    A.    I'm not sure what you're asking.
>
>    Q.    The question is that you were not opening up new credit cards and incurring debt, it was that the original credit cards that you had that you were taking money off of, charging against?
>
>    A.    Primarily, that would be an accurate statement, yes.

schedules but not on the July 2008 financial statement were open as of July 2008, such testimony

is unhelpful.   A trier of fact also would need to have some evidence of the balance of such

accounts as of July 2008 or in the interim to infer, without speculation, that Mr. Dunlap had

failed to disclose liabilities on his financial statements.   SICO has not produced this

information.[20]  The Court finds that SICO has cited nothing in the record to support the inference

---

Q.      What else would it be?

A.      Well, you asked the question if we -- if we opened new cards, and I said I didn't
know.  So if we opened new cards, then we would have used those.  If we did not open
new cards, then we had to use the old cards.

Q.      Did you open up new cards?

A.      I told you I was not aware of any.

Objection, Exhibit A, at 22-23.

[20] Rule 56(d) of the Federal Rules of Civil Procedure, applicable to bankruptcy proceedings by Rule 7056
of the Federal Rules of Bankruptcy Procedure, provides the following:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot
present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  The only affidavit or declaration that SICO has provided is Mr. Covey's Affidavit,
which argues that the Dunlaps' alleged failure to provide information to explain the alleged discrepancies
*proves* that the Dunlaps "failed to disclose several of their liabilities to [SICO] at the time they applied for
the [Lump Sum]."  Covey Affidavit ¶ 31.  Put differently, Mr. Covey's Affidavit argues that the Dunlaps'
nondisclosure of certain facts *supports* its position.  As Mr. Covey's Affidavit does not show that, "for
specified reasons" as required by Rule 56(d), SICO cannot present facts essential to justify its opposition
to the Summary Judgment Motion, the Court finds that SICO has not availed itself of the proper
procedure of Rule 56(d), and, therefore, that the Court should not defer considering the Summary
Judgment Motion or allow SICO any additional time for discovery.  *See Merchant v. Prince George's
Cnty.*, No. 10-1268, 2011 WL 2451528, at *1 (4th Cir. June 21, 2011) (unpublished per curiam decision)
(declining to review a nonmovant's claim that a district court had erred in granting summary judgment
without permitting the nonmovant with an opportunity to conduct additional discovery because the
nonmovant failed to file an affidavit with the district court requesting same in compliance with Rule
56(d)).  Further, as noted in footnote 7, *supra*, SICO has not filed a motion to compel the turnover of such

that the liabilities as stated in the written financial statements were false, and, therefore, finds that no genuine issue for trial exists with regard to the allegations of falsity as to the Dunlaps' liabilities.

With regard to expenses, SICO argues that Mr. Dunlap's written financial statements were materially false because Mr. Dunlap listed $6,128.00 (excluding credit card payments) in monthly expenses in the financial statements but listed $14,986.02 in monthly expenses on the Dunlaps' Schedule J.  Amended Complaint ¶ 48; *see also* Objection ¶ 30.  The expenses listed on Schedule J are not probative as to the expenses provided in the financial statements for the same reasons that the liabilities listed on Schedules D, E, and F are not probative as to the total debts provided in the financial statements.  SICO likewise has failed to connect the two figures.  With nothing in the record to support SICO's factual contention, no genuine issue for trial with regard to the falsity of expenses exists.

Further, SICO's Objection raises new arguments not asserted in the Amended Complaint. The Amended Complaint makes no allegation that the Dunlaps' income as reported by Mr. Dunlap in the July 2008 financial statements was materially false.[21]  SICO's Objection, however,

---

evidence as of the date of entry of this Memorandum Opinion, and the discovery period ended on April 25, 2011, pursuant to the Court's pretrial order.

[21] The relevant portion of the Amended Complaint provides as follows:

> The Financial Statements were materially false for reasons which include the fact that the Debtors did not disclose to SIC[O] the following:
>
> a.     The obligations owing by Debtors as reflected in the Debtors' Schedule F – Crediors Holding Unsecured Nonpriority Claims (see a true and correct copy of the Debtors' Schedule F attached hereto as Exhibit "C").: [*sic*]
>
> i.     Credit card obligations in the amounts of $334,069.42. These obligation [*sic*] were incurred well before the Debtors and SIC[O] entered into the Agreement.  The Debtors only listed $200,000 in credit card debt in the Debtors' Financial Statements at the time of the Agreement.

states that "the Debtors materially misrepresented their income." Objection at 33. SICO's

Objection continues as follows:

> The Debtors represented to SIC[O] that they were making more than $300,000 in commissions for the year 2007 (see Charles [Dunlap] Deposition, Exhibit "8" attached to Exhibit "A"), while they listed $161,239 as gross income in their SOFA. Similarly, for the year 2008, the Debtors represented to SIC[O] that their gross income was $13,500 amounting to $162,000 annually ($13,500 x 12)(see Charles [Dunlap] Deposition, Exhibit "8" attached to Exhibit "A"), but the Debtors in their SOFA listed only $114,840 in gross income for year 2008. See Charles [Dunlap] Deposition, Exhibit "3" attached to Exhibit "A".

*Id.*

SICO only cites to the representations made in the "Financial Information Form," dated

July 2, 2008, which Mr. Dunlap provided to SICO. *Id.*; *see also id.* Exhibit A, Financial

Information Form (Exhibit 8 to Exhibit A). The Financial Information Form lists "present gross

salary or commission" as "Approx $300K/yr Commission." *Id.* Exhibit A, Financial Information

Form (Exhibit 8 to Exhibit A). The Financial Information Form, contrary to SICO's argument,

makes no representation as to gross monthly income, of $13,500.00 or otherwise, for the year of

2008. *Id.* SICO's exhibits reflect that Mr. Dunlap provided (i) a profit and loss statement for

---

> b.      As reflected in Debtors' Schedule J – Current Expenditures of Individual Debtors:
>
> > i.      Debtors listed monthly expenses in the sum amount of $14,986.02 (see a true and correct copy of the Debtors' Schedule J attached hereto as Exhibit "C").
> >
> > ii.      In the Debtors' Financial Statements, the Debtors merely listed $6,128 (excluding payments for unsecured debt, such as credit card payments) in monthly expenses. (see a true and correct copy of the Debtors' Financial Statements attached hereto as Exhibit "B").
> >
> > iii.      The Debtors' monthly expenses in their bankruptcy schedules exceeded those disclosed to SIC[O] by $8,858.02.

Amended Complaint ¶ 48; *see also id.* ¶ 50 ("Furthermore, the obligations listed in paragraph 49 above, were not properly disclosed to SIC[O] by the Debtors in the Financial Statements.").

C&L Sell, the Dunlaps' corporate entity, for the calendar year of 2007, which indicates total commissions of $305,421.29 and total expenses of $296,686.02, and, upon SICO's request, (ii) a profit and loss statement for C&L Sell for the calendar year of 2008 through July 2008, which indicates total commissions of $141,477.62 and total expenses of $123,525.82.[22]  SICO cites the Dunlaps' Statement of Financial Affairs to show that these amounts were materially false.  *Id.* Question 1 of the Statement of Financial Affairs lists (i) 2007 income of $161,239.00, which represents the Dunlaps' "2007 Income per Joint tax return ($160,560 wages + $679 income from business)," and (ii) 2008 income of $89,173.00, which represents "2008 Income per Joint tax return ($114,840 wages – $25,667 loss from business)."

---

[22] At Mr. Dunlap's deposition, counsel for SICO stated the following:

> Q.     What I handed you is the C&L Sell profit and loss statement, 2005 through 2009.
>
> A.     Okay.
>
> Q.     Which is marked as Exhibit 4.  Some of them, as you see on the top corner, have been Bates-stamped by your counsel, which means that she provided it in response to my discovery request, but some were not, which means that we had in our possession and we turned over in response to request for production.

Objection, Exhibit A, at 64-65.  The profit and loss statements for the relevant periods have no Bates stamp.  Further, the top left corner of these profit and loss statements have date stamps not found on the Bates-stamped profit and loss statements.  The record reflects that Mr. Dunlap had submitted these statements to Ms. Groman, a representative of SICO, via e-mail on or about the dates stamped on the top left corner.  SICO attached all of these documents as exhibits to its Objection.  *See* Objection, Exhibit A, Profit and Loss Statements (Exhibit 4 to Exhibit A); *id.* E-mail from Mr. Dunlap to Ms. Groman, dated Aug. 4, 2008 (Exhibit 10 to Exhibit A) (referencing his earlier submission of his 2007 Profit and Loss Statement); *id.* E-mail from Mr. Dunlap to Ms. Groman, dated Aug. 4, 2008, at 2 (Exhibit 11 to Exhibit A) (referencing his intent to submit in the near future his 2008 Profit and Loss Statement).  Nothing in the record infers that SICO did not receive the relevant profit and loss statements, not even the objectionable Covey Affidavit.

Regardless of whether this new argument is properly before the Court,[23] the record does not reflect the written representations SICO alleges with regard to the Dunlaps' income.  The Financial Information Form makes no representation that, "for the year 2008, . . . gross income was $13,500 amounting to $162,000 annually ($13,500 x 12)," as SICO argues.  Objection at 33.  Further, the Financial Information Form makes no representation that, in 2007, the Dunlaps "were making more than $300,000 in commissions."  *Id*.  The Financial Information Form, dated July 2, 2008, represents a *present gross salary or commission* of "Approx $300K/yr Commission."  Because the record does not reflect that Mr. Dunlap made the written financial representations that SICO alleges, the Court finds no genuine issue of fact for trial.[24]

Lastly, SICO argues that Mr. Dunlap is unable to disprove the alleged falsity of the written financial statements.  In essence, SICO attempts to shift the burden to Mr. Dunlap to prove the veracity of his July 2008 financial statements.[25]  Mr. Dunlap, at this posture, however,

---

[23] Rule 9 of the Federal Rules of Civil Procedure, applicable to bankruptcy proceedings by Rule 7009 of the Federal Rules of Bankruptcy Procedure, requires a party to plead fraud with particularity.  Fed. R. Civ. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  Mere identification of a document containing alleged false statements is insufficient to meet the pleading requirements of Rule 9.  *See, e.g.*, *Manheim Auto. Fin. Servs., Inc. v. Park* (*In re Park*), 314 B.R. 378, 383-84 (Bankr. N.D. Ill. 2004) (finding that the failure to plead what aspects of certain financial statements were in fact "false" was a critical omission).  Here, SICO has not alleged in any of the versions of its complaint that Mr. Dunlap's representation of income was false.

[24] Perhaps SICO intended to argue that the written representation of a present gross salary or commission of approximately $300,000.00 per year was materially false.  The Court, however, refuses to entertain such an argument because *SICO not only failed to articulate the argument* but also raised the argument for the first time in its Objection, seven days prior to the hearing on the Summary Judgment Motion, and over thirteen months after the filing of the original complaint.

[25] *See* Objection ¶ 26 ("On or about May 12, 2011, [SICO], through counsel, sent a meet and confer ('Meet & Confer') letter to [the Dunlaps] requesting documents, statements, and credit card records that would verify and explain the discrepancies of the debts the [Dunlaps] incurred between the time they applied for SIC[O] funds and the Petition Date."); *id.* ¶ 29 ("To date, the [Dunlaps] have not provided any other documents, statements, and credit card records that would verify and explain the discrepancy of the debts the [Dunlaps] incurred between the time they applied for SIC[O] funds and the Petition Date.  The fact that the [Dunlaps] have not provided additional information to explain the discrepancy in and [of]

does not carry that burden.  Mr. Dunlap's burden, as the moving party, is "to demonstrate clearly

that there is no genuine issue of fact" for trial.  *Phoenix Sav. & Loan, Inc., Aetna Cas. & Sur.*

*Co.*, 381 F.2d 245, 249 (4th Cir. 1967).  Mr. Dunlap has met his burden by citing to particular

materials in the record and by showing that the materials do not establish the presence of a

genuine dispute of a material fact.  *See* Fed. R. Civ. P. 56(c)(1).  The burden shifted to SICO to

support its assertion that a material fact is genuinely disputed by citing to particular materials in

the record or by showing that the materials cited do not establish the absence of a genuine

dispute.  *Id.*  Although the Court arguably is not required to consider materials in the record not

cited by either party,[26] the Court has reviewed the record in its entirety and concludes that the

material issue of whether the financial statements are false, much less materially false, is not

genuinely in dispute and that summary judgment should be granted in favor of Mr. Dunlap on

this count.

As SICO has failed to carry its burden on this essential element, all other facts regarding

the allegations made under 11 U.S.C. § 523(a)(2)(B) are immaterial.  *Celotex Corp. v. Catrett,*

---

itself proves that the [Dunlaps] do not have any evidence to that effect, and thus, failed to disclose several of their liabilities to [SICO] at the time they applied for SIC[O] funds."); *id.* ¶ 34 ("Thus, based on the compelling evidence in the records and based on the absence of any controverting evidence by [the Dunlaps] where [Mr. Dunlap] has had ample time to produce evidence, [Mr. Dunlap's] Financial Statements and Financial Information as provided to SIC[O] were materially false, and therefore, based on the magnitude and numerosity of the omissions of significant liabilities, expenses, and income from the Financial Statements and Financial Information, the Court can find that the statements provided by the [Dunlaps] were materially false, and at the very least, triable issues of fact exist.").

[26] *See Sinclair v. Mobile 360, Inc.*, Case Nos. 09-1188, 09-1189, 2011 WL 733180, at *6 (4th Cir. Mar. 3, 2011) ("In candor, a majority of the other circuits might prefer a view contrary to our *Campbell* decision, [*Campbell v. Hewitt, Coleman & Assocs.*, 21 F.3d 52 (4th Cir. 1994),] and that view may have since been ensconced in Rule 56 by way of the 2010 amendments."); *id.* at *7 (Wilkinson, J., dissenting) ("[U]nder the current Rule 56, district courts need consult only those materials cited by the parties when ruling on summary judgment."); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); Fed. R. Civ. P. 86(a) ("[These rules] govern . . . proceedings after [December 1, 2010,] in an action then pending unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice.").  As stated *supra*, this Court sees no reason of why the application of the December 1, 2010 amendments to Rule 56 to the instant proceeding would be infeasible or work an injustice on either party.

477 U.S. 317, 323 (1986) (finding that where a nonmoving party fails to carry its burden at the summary judgment stage, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial") (quoting Fed. R. Civ. P. 56(c)).  Even if the Court were to find that SICO carried its burden to establish that a genuine dispute of material fact exists regarding the falsity of the financial statements, the Court would still find that SICO has failed to carry that burden with respect to the other required elements under § 523(a)(2)(B).

The third element of § 523(a)(2)(B) requires the creditor to demonstrate reasonable reliance upon the written financial statements.  SICO briefly mentions that it reasonably relied on Mr. Dunlap's written financial statements by examining them and verifying the assets listed thereon.  Objection at 32.  At the conclusion of its discussion regarding the third count of the Amended Complaint, SICO requests that Court "find from the totality of the evidence that there is [*sic*] material issue as to the fact of SIC[O]'s reliance on the Financial Statements and Financial Information provided by the Dunlaps to SIC[O]."  *Id.* at 34.  SICO's Objection does not otherwise address this requirement.  Such statements by SICO are wholly insufficient to satisfy the burden of showing that a genuine dispute of a material fact exists as to this element, particularly in light of this Court's previous holding that "[t]o establish reasonable reliance upon a false statement of financial condition, a creditor must prove that reliance was objectively reasonable and that there was actual reliance."  *Elrod v. Bowden* (*In re Bowden*), 326 B.R. 62, 93 (Bankr. E.D. Va. 2005) (citing *Dominion Bank v. Wingo* (*In re Wingo*), 112 B.R. 141 (W.D. Va. 1990); *I.H. Mississippi Valley Credit Union v. O'Connor* (*In re O'Connor*), 149 B.R. 802, 809 (Bankr. E.D. Va. 1993)).

SICO has likewise failed to sufficiently address the last element of § 523(a)(2)(B) regarding the debtor's intent to deceive.  SICO alludes to Mr. Dunlap's status as a "sophisticated businessman with sufficient education and an appreciation of financial transactions," but fails to connect how such status supports the existence of a genuine dispute of material fact.  As a result, the Court finds that SICO has failed to carry its burden as to the third and fourth elements set forth in § 523(a)(2)(B), and that summary judgment in favor of Mr. Dunlap is appropriate as to Count Three of the Amended Complaint.

### F.  Count Five: § 523(a)(6)

In Count Five of the Amended Complaint, SICO asks the Court to determine that the debt owed to it is nondischargeable under 11 U.S.C. § 523(a)(6), alleging that the failure of the Dunlaps to remit the Pension Payments to SICO constituted a conversion of SICO's money to the Dunlaps' own use and that such use constitutes a willful and malicious injury under § 523(a)(6).  Amended Complaint ¶¶ 66-68.  Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  Judge Morgan has discussed the requirements for a finding of conversion in Virginia:

> In the Commonwealth of Virginia, conversion is "the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights."  *Economopoulos v. Kolaitis*, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000).  A plaintiff alleging conversion must have a property interest in the converted property and be entitled to immediate possession of that property.  *Id.*  A debtor's intent would not be relevant in a tort action for conversion in Virginia.  *See, e.g.*, *Hartzell Fan, Inc. v. Waco, Inc.*, 256 Va. 294, 301-02, 505 S.E.2d 196, 201 (1998) ("Conversion includes any distinct act of dominion wrongfully exerted over property that is in denial of, or inconsistent with, the owner's rights.").

*Kubota Tractor Corp. v. Strack*, Civil No. 4:06cv145, 2007 WL 517492, at *5 (E.D. Va. Feb. 6, 2007), *rev'd on other grounds*, *In re Strack*, 524 F.3d 493 (4th Cir. 2008).

Thus, to succeed on this count at trial, SICO would have to show at the outset that it had

a property interest in Mr. Dunlap's Pension Payments.  The Court has already determined that summary judgment should be granted as to Count One and that Count One should be dismissed because SICO does not have a property interest in Mr. Dunlap's Pension Payments because those payments were not due and payable at the time the parties entered into the Agreement.  As a result of this determination, and because SICO has failed to demonstrate that a genuine dispute of material fact exists as to SICO's property rights in the Pension Payments, the Court finds that SICO has not demonstrated that a genuine dispute of material fact exists regarding this count.  As concisely stated by the court in *In re Price*, "[u]nless [SICO] owned an interest in [the debtor]'s pension rights, whether as collateral or through an outright sale, there can be no violation under" § 523(a)(6).  *In re Price*, 313 B.R. at 809; *see also Structured Invs. Co. v. Webb* (*In re Webb*), 376 B.R. 765, 767 (Bankr. W.D. Okla. 2007) (holding that in the absence of an enforceable prepetition contract, no debt existed upon which SICO could maintain its nondischargeability complaint) (citing *Mandalay Resort Grp. v. Miller* (*In re Miller*), 292 B.R. 409, 412 (B.A.P. 9th Cir. 2003)).  Thus, because SICO had no property interest in the Pension Payments at the time the parties entered into the Agreement, SICO cannot maintain a claim of nondischargeability under 11 U.S.C. § 523(a)(6), and Count Five also must be dismissed.

### IV.  Summary

For the reasons stated above, the Court finds that all of objections by SICO to the affidavit of Mr. Dunlap should be overruled.  The objections by Mr. Dunlap to the affidavit of Mr. Covey should be sustained.

The Court finds that summary judgment should be granted in favor of Mr. Dunlap as to Counts One, Two, Three, and Five of the Amended Complaint and that Counts One, Two, Three, and Five of the Amended Complaint should be dismissed.  As a result, the Court finds that the

debt owed to SICO by Mr. Dunlap should be determined to be dischargeable and treated as an unsecured debt in the Dunlaps' bankruptcy case. The Court further finds that Count Six of the Amended Complaint, wherein SICO sought payment of its attorney fees and costs pursuant to the Agreement, is mooted by the granting of Mr. Dunlap's Summary Judgment Motion on the four remaining substantive counts and that Count Six must also be dismissed.

The Court will issue separate orders consistent with the findings contained in this Memorandum Opinion. Further, the Court will issue a scheduling order regarding the request contained in both Mr. Dunlap's Summary Judgment Motion and Mrs. Dunlap's Motion for Summary Judgment for an award of attorney fees and costs incurred defending the Amended Complaint filed by SICO pursuant to 11 U.S.C. § 523(d).

The Clerk shall transmit a copy of this Memorandum Opinion to Charles Homer Dunlap and Lucille Grace Dunlap, Debtors/Defendants; to Nicole A. Rosenblum, counsel for the Debtors/Defendants; Structured Investments Co., LLC, Plaintiff; to Thomas B. Dickenson, Craig G. Margulies, and Fahim Farivar, counsel for the Plaintiff; and to Debera F. Conlon, Assistant United States Trustee.

Entered this 13th day of September, 2011, at Norfolk in the Eastern District of Virginia.

STEPHEN C. ST. JOHN
United States Bankruptcy Judge